[Nos. 44747, 44748. En Banc. January 5, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. VERLON GALE BEAN, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. STEVE TROUTMAN, *Appellant.*

468

*Clifford Kuhn* and *Don L. McCulloch* (of *Roethler & McCulloch*), for appellant Bean.

*C. C. Bridgewater, Jr.*, and *Walstead, Mertsching, Husemoen, Donaldson & Barlow*, for appellant Troutman.

*Henry R. Dunn, Prosecuting Attorney*, and *James E. Warme, Chief Criminal Deputy*, for respondent.

HICKS, J.—These factually interrelated cases were certified to this court from the Court of Appeals, Division Two. Thereafter, we ordered the cases consolidated for purposes of review.

Appellants, Bean and Troutman, appeal convictions for possession of controlled substances in violation of RCW 69.50. The issues concerned are with suppression of evidence.

On April 24, 1975, a black Chevrolet van was halted on the Longview Fibre Road in Cowlitz County by law enforcement officers posing as a road survey crew. A marked sheriff's car drove in behind the van and a deputy approached the vehicle and requested the operator's license. Upon ascertaining the driver's name was Verlon Gale Bean and upon a pretext getting him to leave the van,

Bean was arrested. The van was searched and 100,000 tablets of methamphetamine, commonly known as "speed", were found. A search of Bean's person produced a small container with six more of the tablets in it. Both the arrest and search were conducted without a warrant. Bean was charged with possession of methamphetamine in violation of RCW 69.50.208(b)(1).

Prior to this time, one Hawn had been arrested for a drug offense. Hawn, with his attorney present, Officer Reel and a deputy prosecuting attorney entered into an agreement where, in return for a favorable recommendation to the court at the time of his sentencing, Hawn would furnish good information to the police concerning a more important figure in the illicit drug business in the area.

Hawn disclosed to the authorities that he normally received his drugs through a middleman by the name of Stanley. He stated that on at least one occasion he had been present when Stanley obtained drugs from a man in a brown van while they were on the Longview Fibre Road. Hawn stated his belief that the van driver's name was "Beam". On one occasion at night, Hawn had accompanied Stanley when he drove to Bean's residence. Because they approached the house by an alley and Hawn did not leave the car, he did not know the exact address of the house. However, he was able to give its general vicinity. Later, Hawn was able to supply the information that Bean had a new black van.

With the information furnished them, the officers were able to identify Bean as living at 621 22nd Avenue, Longview. Steve Troutman also lived in the house. Bean was found to have access to two vans, one an older brown one with Oregon license plates and the other a 1974 black Chevrolet van. Neither was registered in Bean's name. Other informants, characterized by the police as reliable in past occurrences, revealed (1) Bean had a ready supply of money though he had no known employment, (2) he made trips to California and Mexico, and (3) he was "involved in drug traffic in the area".

Hawn had previously arranged with Stanley to purchase 100,000 "hits of speed" for $9,000. On the day of Bean's arrest at about 3 p.m., Hawn advised Officer Reel that Stanley would have the drugs later that afternoon. The exact site of the transaction was not given as Stanley had not revealed it. Several possible locations had been discussed in police briefing in the sheriff's office and teams were dispatched to cover as many sites as possible.

Stanley and Hawn, in a white Toyota, were followed by police to the Longview Fibre Road. Within a few minutes, the black van appeared and the arrest followed. The arrest took place shortly after 5 p.m. and out of the sight of the white Toyota which was not bothered.

Based primarily upon the discovery of drugs in Bean's van, the police sought a search warrant for the house at 621 22nd Avenue, Longview, Washington. Almost immediately following Bean's arrest and prior to obtaining a warrant, the officers who had the residence under surveillance were ordered to secure the house and it was immediately entered.

The evidence is in dispute as to whether an arrest was made at that time. In any event, defendant Troutman was read his *Miranda*[1] rights and all persons present were "detained" for as much as 45 minutes. The officers, upon entering the house, observed a small amount of marijuana and pipes for smoking it in plain view in the living room. The officers who "secured" the residence contacted Officer Reel and informed him of the circumstances of the securing prior to his obtaining the search warrant for the residence.

After the search warrant was obtained and served, a greater amount of marijuana was seized in the kitchen and a small amount of other drugs were found throughout the house. Troutman was formally arrested and again read his *Miranda* rights. Subsequently, at the sheriff's office, he

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

made a full confession which was admitted against him at trial.

The issue in both these cases is the constitutional validity of the arrests and the contemporaneous searches and seizures accompanying them.

We are satisfied that (1) appellant Bean was legally arrested, (2) the van he was driving was lawfully searched, (3) denial of his motion to suppress evidence was proper, and (4) his conviction should be affirmed. For authority in Bean's case, we rely upon *State v. McGee,* 15 Wn. App. 563, 550 P.2d 552 (1976); *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973); *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); and *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925).

■ Because of the strong motive that Hawn had to be accurate in the information he provided the officers, we believe Hawn qualifies as a reliable informant upon whom the police were justified in placing reliance. In addition, since verification of previously furnished details concerning Bean had established their accuracy, the police were justified in stopping the van and arresting Bean when he appeared on schedule. *See State v. McGee, supra; State v. White, supra;* and *Draper v. United States, supra.*

■ We hold that Bean's warrantless arrest was lawful, since the officers had probable cause to believe that a felony was being committed at the time. Under the circumstances that exist in this case, warrantless search of a vehicle and seizure of contraband found therein is justified by *McGee, White* and *Carroll.*

The warrantless "securing of the house" at 621 22nd Avenue in Longview, and the warrantless arrest of the defendant Troutman are another matter. That the warrantless search of a house and the warrantless search of an automobile stand on different ground, *compare Vale v. Louisiana,* 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969 (1970) *with Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970).

Subject only to a few exceptions, a search without a warrant is per se unreasonable under the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). "The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.'" (Footnotes omitted.) *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Here the State contends exigent circumstances existed.

The totality of circumstances said to justify a warrantless securing or search of a house under the doctrine of exigent circumstances will be closely scrutinized. This, we feel, is the correct rule in view of the practicable alternative available in the form of the telephonic warrant. CrR 2.3(c).[2]

In its ruling following the suppression hearing in Troutman's case, the trial court stated:

Now I am gravely concerned about the conduct of the police officers. I have indicated before, I am sympathetic to their position.

. . . Furthermore, I think, frankly, that if we were to put a stamp of approval upon that basis, that we would have three so–called emergency entrances a week in Cowlitz County. Every time they thought they had probable cause to get a search warrant there would be some indication that, "Wait a minute, maybe we better have somebody stationed in the house to make sure it doesn't walk away while we are applying for a search warrant," and I think it is, you know, it could have grave consequences and a very dangerous situation, and a thing I don't think that we should do.

. . .

---

[2]CrR 2.3(c) states in part as follows:

"A warrant shall issue only on an affidavit or affidavits establishing the grounds for issuing the warrant. Such affidavit or affidavits may consist of an officer's sworn telephonic statement to the judge; provided, however, such sworn telephonic testimony must be electronically recorded by the judge on a recording device in the custody of the judge at the time transmitted and the recording shall be retained in the court records and reduced to writing as soon as possible thereafter."

So I think this, frankly, . . . well, one other thing, at that time, although this county is not set up for it, but I understand that there is also a telegraphic and telephonic warrant where the magistrate can make the authorization over the telephone, and if that could have been accomplished in this case and in every other case, it has to be recorded, as I understand it, but if the county, the police department wants to have that ability, a tape recorder isn't that expensive, and in this case, a warrant could have been obtained by telephone probably within five minutes instead of a couple of hours, if they felt there was the real emergency, which they did feel, and I think they were right.

All right. So I think that the entry into the home originally, without the warrant, is improper, and I am going to suppress all of the evidence that was obtained by the police officers as a result of that entry.

■ In suppressing the evidence seized prior to the securing of a search warrant, the trial court necessarily found by implication that no sufficient exigent circumstances in this case justified the warrantless entry of the residence. We are in complete agreement with the trial court's statements, but we go further to hold that the trial court's failure to suppress evidence which was obtained from the house after the search warrant was served, was error. The initial entry into the house was wrongful and the subsequently obtained search warrant was not curative of the original illegal entry. *People v. Shuey,* 13 Cal. 3d 835, 850, 533 P.2d 211, 120 Cal. Rptr. 83 (1975). In *Shuey* the California Supreme Court, upon being presented with this very issue, stated as follows:

Analytically this case can be regarded simply as involving a de facto, inchoate seizure of the person and property of Paul the moment the police began the illegal occupation. Thereafter the obtaining of the warrant could no more operate "to disinfect this conduct" (30 Cal.App.3d at p. 540) than if the police had actually seized the individual items sought to be suppressed prior to acquisition of the warrant.

(Footnote omitted.)

Since we hold that all evidence seized at the residence must be suppressed, we need not reach the issue of the admissibility of defendant Troutman's confession. Absent corroborative evidence, a conviction will not be sustained on a confession alone. *State v. Goranson,* 67 Wn.2d 456, 408 P.2d 7 (1965); *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The judgment in the case of Verlon Gale Bean is affirmed.

The judgment in the case of Steve Troutman is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.