[No. 2878–3. Division Three. October 16, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY A. MARCUM, *Appellant.*

*Nels A. Hansen* and *Collins & Hansen,* for appellant.

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Guy Nelson* and *James A. Whitaker, Deputies,* for respondent.

ROE, J.—On September 9, 1977, Kennard Carzoli was stopped for speeding near Moses Lake, Washington, by Trooper Butler of the Washington State Patrol. Observing

several beer cans in the back seat, and detecting a "strong odor of intoxicants," Butler had Carzoli, age 20, perform several physical sobriety tests which he failed. Butler arrested Carzoli for DWI and possession of marijuana, after searching him and finding two marijuana cigarettes. Defendant Marcum, a passenger in the car, was arrested for contributing to the delinquency of Carzoli. He was given his *Miranda* rights by Deputy McBride who had arrived to assist Butler. Marcum told both officers that he wanted to consult with an attorney before answering any questions.

Butler took the car keys and opened the trunk, where he found more beer cans, two grocery bags filled with marijuana and a white athletic bag which contained two baggies of marijuana, two T-shirts, and a motel registration card bearing Marcum's name. Butler seized this evidence, placed it in his patrol car with Carzoli and Marcum, and drove to the Grant County Sheriff's Office.

Marcum requested a phone call. Butler later testified:

> At that time [after Marcum requested an attorney] I asked Mr. Marcum if he understood his rights and he stated that he did. I asked him if he remembered being advised of his rights by Deputy McBride; he stated that he did. I asked him if he bought the baggies of marijuana or if they were for his own use or for resale or for what. He stated that he bought them for his own use. When I asked him how much he had paid for the baggies, he stated that he didn't want to say anything more until he had talked with his attorney. At that point he finished placing his call to a Mrs. Gray, advising her to get a hold [*sic*] of his attorney, Mr. Maxey, and have him contact him at the Grant County Sheriff's Office.

Marcum was charged with possession of over 40 grams of marijuana in violation of the Uniform Controlled Substances Act, RCW 69.50.401.

After receiving testimony from Deputy McBride and Officer Butler in a pretrial CrR 3.5 hearing, the court concluded that Marcum's loaded response to Butler's question was voluntarily made after being properly informed of his constitutional rights. The court also concluded that the

warrantless search of the trunk was proper as incident to the lawful arrest of Carzoli and ruled the evidence admissible.

Marcum waived a jury: after a bench trial, he was convicted; he appealed, raising a number of assignments of error.

■ Marcum first challenges the constitutionality of RCW 69.50.401, contending that the prohibition against private possession of marijuana violates his constitutional right to privacy. In *State v. Anderson,* 16 Wn. App. 553, 558 P.2d 307 (1976), *review granted,* 89 Wn.2d 1002 (1977), Division Two of this court held that the right to privacy does not extend to the possession or delivery of marijuana. That is presently the law of Washington, which we hold binds this court. The issue is currently pending before the State Supreme Court,[1] but until and unless that high court changes the case law, we deem the issue foreclosed in this court.

Marcum next contends that the trial court erred in admitting his statement into evidence. Despite Marcum's post–*Miranda* request for assistance of counsel and his wish to place a telephone call, Officer Butler proceeded to question him. The State argues that Marcum waived his right to the presence of counsel by responding to Butler's question. We disagree.

■ Under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), all questioning must stop once counsel has been requested. *United States v. Rodriguez–Gastelum,* 569 F.2d 482 (9th Cir. 1978). In *State v. Chapman,* 84 Wn.2d 373, 376–77, 526 P.2d 64 (1974), the court held:

> The language of *Miranda v. Arizona,* . . . is very plain. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain

---

[1]State v. Smith (cause No. 45296).

silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."

(Citation omitted.) *See also State v. Haynes*, 16 Wn. App. 778, 559 P.2d 583 (1977); *State v. Boggs*, 16 Wn. App. 682, 559 P.2d 11 (1977).

An accused, however, is not imprisoned within his rights and may waive a previously invoked right to counsel: *United States v. Womack*, 542 F.2d 1047 (9th Cir. 1976). In *North Carolina v. Butler*, 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755 (1979), the United States Supreme Court held that an explicit statement of waiver, either oral or written, was not indispensable to a finding that the defendant relinquished the right to counsel guaranteed by *Miranda.*

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. . . . The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

(Footnote omitted.) *North Carolina v. Butler, supra* at 99 S. Ct. 1757. *See also State v. Pierce*, 23 Wn. App. 664, 669, 597 P.2d 1383 (1979), where the court said:

> Under the heading "Conclusion of Law," the trial court made a factual statement "that defendant knowingly and voluntarily waived his right to counsel." A statement of fact included within a trial court's conclusions of law will be treated as a finding of fact by the reviewing court. *Redmond v. Kezner*, 10 Wn. App. 332, 517 P.2d 625 (1973). A finding of fact supported by substantial evidence will not be overturned on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

██ Assuming the above applies to an alleged waiver of a constitutional right, it has no application to the instant

case. The finding here was not that the defendant had waived his right to counsel, merely that the statements were "knowingly and voluntarily given after being properly informed of his constitutional rights" and as such the findings are insufficient to satisfy the requirements of *Boggs* and *Haynes*. There is a critical difference in remaining silent after *Miranda* warnings and affirmatively asserting a right to counsel before answering questions.

In this case we cannot clearly infer that, at the time he answered Butler's question, Marcum voluntarily and knowingly waived the right to counsel he explicitly invoked when arrested. Trooper Butler heard Marcum's request for counsel; further, he initiated questioning when Marcum was about to contact his attorney via telephone. The fact that Butler was able to elicit an incriminating response to his question does not prove waiver.

> Where the government asserts waiver, however, it bears a heavy burden of proving its claim. . . . This burden is not discharged by the mere fact that statements were eventually obtained from an accused. . . . Nor may the government establish waiver by the mere repetition of *Miranda* warnings.

(Citations omitted.) *United States v. Womack, supra* at 1050–51.

The State has failed to sustain its burden here; consequently, admission of Marcum's statement was reversible error. *Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975), relied upon by the State, is not in point because at no time during police interrogation did Mosley indicate a desire to consult with a lawyer.

Marcum urges that the evidence in the trunk of the car was improperly seized and therefore inadmissible. The two grocery sacks and the athletic bag were introduced at trial over Marcum's objection. Due, however, to an odd occurrence,[2] the trial court considered only the marijuana contained in the athletic bag as evidence against Marcum.

---

[2]Marcum was arrested, and the two grocery bags were seized, on September 9, 1977. Although the police had exclusive custody of the evidence from the date of

 Subject to only a few "jealously and carefully drawn" exceptions, a warrantless search is per se unreasonable. *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978); *State v. Brown,* 9 Wn. App. 937, 515 P.2d 1008 (1973). If a search and seizure is conducted outside the judicial process, without prior sanction by a "neutral and detached magistrate," the State has the burden of justifying the search under one of the exceptions to the warrant requirement. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979); *State v. Bean, supra; State v. York,* 11 Wn. App. 137, 521 P.2d 950 (1974).

 Here, the State attempts to justify the seizure of the athletic bag on two grounds: (1) the search of the trunk was proper as incident to the lawful arrest of Carzoli and Marcum; and (2) the exigent circumstances of a movable vehicle on a public highway bring the search under the mantle of the "automobile" exception established in *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925), and *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). After a lawful arrest, police have the right to make a warrantless search both of the arrestee and of the area within his immediate control. *State v. Pristell,* 3 Wn. App. 962, 478 P.2d 743 (1970).

> The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to discover and prevent the loss or destruction of evidence of the crime. *Preston v. United States,* [376 U.S. 364, 367, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964)]; *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970).

*State v. Gluck,* 83 Wn.2d 424, 428, 518 P.2d 703 (1974). The fundamental inquiry, however, is whether the search

---

arrest to trial, a grocery receipt dated *September 18, 1977,* was found in the bags when they were introduced at trial. The court concluded that the two bags "were not shown to be within the control and possession of defendant Marcum beyond a reasonable doubt," and convicted Marcum solely on the marijuana found in the white athletic bag and his statement to Trooper Butler.

was reasonable: the "incident to arrest" exception does not, *in every conceivable circumstance,* presume constitutional approval of a warrantless search of the environs, property or vehicle of an accused. *Every* search must be examined, in light of the surrounding circumstances, to determine if it violated the Fourth Amendment prohibition against unreasonable governmental intrusion into the life of the citizen.

*State v. Orcutt,* 22 Wn. App. 730, 591 P.2d 872 (1979), is persuasive. There, defendant's suspicious behavior prompted a police "tail." Defendant parked his car behind a building and left it. The police discovered the car and defendant's absence, entered the car to look for vehicle identification, and found shreds of marijuana in the glove compartment. Defendant was located and arrested; the officer made a second warrantless search of the car's interior, and seized psilocybin mushrooms, additional marijuana, and smoking paraphernalia. In ruling the second search unconstitutional, the court stated:

> We are not prepared to rule that discovery of contraband in one area of a car might not furnish probable cause to search another part. However, we think the circumstances of this case give rise to conflicting inferences. For example, one generalized assumption might be that one who possesses even a small quantity of marijuana and carries it in his car is likely to possess and carry more in his automobile. Another assumption might be that the possessor of the Zig Zag papers with the residual flakes carried marijuana for his personal use only and that his supply was exhausted.
>
> The point is that the observation of the papers and residue of marijuana in the glove box is an inherently ambiguous observation, and in our view suggests the desirability if not the necessity for a review of all the facts by a neutral and detached magistrate where the exigencies of the circumstances permit.
>
> . . .
>
> Assuming arguendo that Officer Ambrose did have cause to believe defendant's automobile contained more contraband, we are persuaded that there was insufficient evidence of exigent circumstances to justify the search

without first presenting the evidence to a neutral and detached magistrate.

*State v. Orcutt, supra* at 736–37.

Here, the presence of two marijuana cigarettes on Carzoli's person gives rise to equally ambiguous inferences. When Officer Butler took the car keys to explore the trunk, the vehicle was no longer "inherently mobile" or in danger of departure. Both Carzoli and Marcum were under arrest and detained in the back of the patrol car. Deputy McBride was present and available to secure the car and its contents while a warrant was obtained. These facts belie sufficient exigent circumstances to exempt this search from the warrant requirement.

The United States Supreme Court recently delineated the allowable scope of a search incident to arrest:

> [W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States*, 376 U.S., at 367, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

(Footnote omitted.) *United States v. Chadwick*, 433 U.S. 1, 15, 53 L. Ed. 2d 538, 97 S. Ct. 2476, 2485 (1977).

■ *Carroll v. United States, supra,* does not vindicate this search. Under the "Carroll doctrine," a warrantless search is constitutionally permissible

> where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.

*Chambers v. Maroney, supra* at 51.

*United States v. Chadwick, supra,* and *Arkansas v. Sanders, supra,* refined the "automobile" exception by

drawing a distinction between a search of a vehicle and a search of the vehicle's contents.

An automobile's amenability to official regulation and inspection and its function as transportation on public thoroughfares diminish the owner's expectations of privacy concerning his vehicle. In *Chadwick,* the court found a significant difference between a motor vehicle and luggage or other personal property which it may contain:

> The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

*United States v. Chadwick, supra* at 13. The court invalidated a warrantless search of a locked footlocker which had been seized from the trunk of an automobile parked at a curb.

*Arkansas v. Sanders, supra,* reaffirmed *Chadwick.* Armed with an informant's tip and a detailed description of the defendant but without a warrant, police established surveillance at the Little Rock, Arkansas, airport. Defendant debarked from the predicted flight and retrieved a green suitcase from the airline baggage service. According to the informant, the luggage contained marijuana. Police observed defendant load this bag into the trunk of a taxicab; several blocks from the airport, the cab was stopped, the trunk opened, and the suitcase searched.

The State advocated the extension of *Carroll* to allow warrantless searches of everything discovered in an automobile as well as the automobile itself. Rejecting this argument, the court held that *Chadwick,* and not *Carroll,* controlled.

> A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in

*Chadwick,* the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. . . . Accordingly as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

(Citations and footnotes omitted.) *Arkansas v. Sanders, supra* at 99 S. Ct. 2593.

The established rule, and the one that governs this case, is stated at 99 S. Ct. 2594:

In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, *their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway.* Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained.

(Italics ours.) For constitutional purposes, there is no fine distinction between Marcum's athletic bag and Sanders' green suitcase: Marcum, like Sanders, had a reasonable expectation that his bag would be free from police intrusion without, at least, prior judicial approval. The warrantless search, therefore, was improper and the fruits of that search should have been suppressed.

In view of the disposition of these issues, it is unnecessary to reach Marcum's remaining assignments of error.

It would be well to add a further note. The judiciary is under increasing attack for alleged leniency and concern for the welfare of the criminal at the expense of the victim and, possibly, public safety. We are not here "freeing" a criminal on a technicality or letting Marcum leap through a loophole in the law. The constitution must work for everyone, or it may work for no one. Two fundamental constitutional

derivative rules are involved in this case: the right against self-incrimination, and the right to be secure from unreasonable searches and seizures. Those who framed the constitution, far wiser than we in their foresight, weighed the interests of society and of the accused, and decided the balance in favor of the rights of the defendant. Protecting the rights of one accused of crime insures the liberty of us all.

Reversed.

GREEN, C.J., and McINTURFF, J., concur.