[No. 8692–8–I.   Division One.   May 18, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. ISAAC MOORE, *Appellant*.

*Robert Boruchowitz* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Lord, Deputy,* for respondent.

RINGOLD, J.—Isaac Moore appeals a judgment and sentence entered on his conviction by a jury of first degree robbery. We sustain the trial court's denial of Moore's motion to suppress evidence, but we remand for a hearing on the admissibility of a prior conviction to impeach Moore's credibility under ER 609(a).

At about 10:30 p.m. on January 24, 1980, a man robbed a desk clerk at the Seattle depot of the Trailways Bus Company. The robber, using what appeared to be a gun, took cash and a bus ticket for Salt Lake City. The victim contacted the police and described his assailant as a black man, 5 feet 11 inches tall, wearing a yellow or tan leather jacket.

The next day at about 11 a.m., Isaac Moore presented a ticket for Salt Lake City at the Tacoma Trailways depot and checked two suitcases for Portland. The ticket had the same number as the one stolen in Seattle the night before.

Officer Lynch of the Tacoma Police Department received a call reporting this incident. He confirmed the Seattle robbery and obtained a description that matched that of the suspect. Lynch arranged for surveillance of the bus station, but the Salt Lake City bus departed at 1:25 p.m.

without Moore.

Lynch then went to the storage room and took the suitcases that Moore had previously checked. He briefly opened them and saw what appeared to be a gun. He took the luggage to the Tacoma police station to await the arrival of detectives from Seattle. After Lynch left the bus depot, Moore returned and attempted to transfer his ticket to Greyhound. The police were notified and Moore was arrested at about 2:30 or 2:45 p.m.

After Seattle detectives received the luggage and took Moore into their custody, Detective Lima of the Seattle Police Department prepared an affidavit for a search warrant. The affidavit contained the information connecting Moore with the robbery and stated that the detectives would like to search the luggage for the clothing worn, the weapon used and the items taken in the robbery. The warrant was issued, and the search revealed a jacket and a starter pistol that were admitted into evidence.

Considering the motion to suppress, the trial court heard testimony from Detective Lima that he was not told that the luggage had been searched in Tacoma. Lima testified that he assumed a search had occurred because he was told about the possibility of a gun. While reviewing his police report prior to the hearing on the motion to suppress, Lima recalled his assumption and informed the prosecutor about his suspicions. The prosecutor spoke to Officer Lynch, who denied making the search. Lima then spoke directly to Lynch and learned that the search was made. Lynch then admitted to the prosecutor that he had lied when he denied searching the luggage. The trial court also heard testimony that at about 3:00 p.m. on the day of Moore's arrest, Lynch telephoned a Seattle police lieutenant to inform him that he had seized Moore's luggage. The possibility of a gun was discussed in their conversation, but the occurrence of the search was not mentioned.

The trial court entered unchallenged findings that the Seattle police officers did not direct or control the decision to open the luggage in Tacoma and that the Seattle police

did not know that the Tacoma police had conducted a search. The court concluded that Lynch's actions and lies were not utilized in the affidavit for the search warrant and denied Moore's motion to suppress the starter pistol and jacket.

### THE WARRANTLESS SEIZURE AND SEARCH
#### OF THE LUGGAGE

Moore contends that Officer Lynch's warrantless seizure and opening of the suitcases was unlawful because there was no probable cause to believe they contained fruits or instrumentalities of the robbery and there was ample opportunity to secure a warrant. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979).

The State responds that the warrantless seizure of the luggage was justified by probable cause to believe it contained contraband. *Arkansas v. Sanders, supra.* The State also claims that the warrantless search was lawful because Moore had abandoned the suitcases and had a reduced expectation of privacy once he checked them with a common carrier. *United States v. Bronstein,* 521 F.2d 459, 31 A.L.R. Fed. 920 (2d Cir. 1975), *cert. denied,* 424 U.S. 918, 47 L. Ed. 2d 324, 96 S. Ct. 1121 (1976); *State v. Wolohan,* 23 Wn. App. 813, 598 P.2d 421 (1979).

Subject only to a few jealously and carefully drawn exceptions, warrantless searches and seizures are per se unreasonable. *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978). The requirement of a warrant will be excused only where the societal costs of obtaining a warrant, such as a risk of losing the evidence, outweigh the reasons for obtaining the approval of a neutral magistrate. *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980). Where the State proves that it is impractical to secure a warrant because of a danger of the loss of the evidence, a warrantless seizure is lawful when supported by probable cause. *State v. Gerke,* 6 Wn. App. 137, 491 P.2d 1316 (1971); *State v. Wolfe,* 5 Wn. App. 153, 486 P.2d 1143 (1971). The State here made a showing of probable cause to believe that

the person checking the luggage had committed the robbery the day before in Seattle. It was reasonable to believe that his luggage contained fruits or instrumentalities of that robbery. The suspect had checked the luggage to Portland, and there was a likelihood that it would be transported out of town unless detained. The mere fact that it was not placed on the first bus did not eliminate this danger. The warrantless detention of the luggage pending further investigation was a reasonable seizure. *United States v. Van Leeuwen,* 397 U.S. 249, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970); *United States v. Klein,* 626 F.2d 22 (7th Cir. 1980); *State v. Birdwell,* 6 Wn. App. 284, 492 P.2d 249, *cert. denied,* 409 U.S. 973, 34 L. Ed. 2d 237, 93 S. Ct. 346 (1972).

*Arkansas v. Sanders, supra,* holds that the seizure of the suitcases eliminates the risk of losing their contents so that absent exigent circumstances a search warrant is required before opening them. Checking the luggage with the bus company did not eliminate Moore's reasonable expectation of privacy concerning the contents. *State v. Wolohan, supra.* As Officer Lynch virtually acknowledged in his testimony, his undisclosed warrantless search was unlawful.[1]

This conclusion brings us to the troubling question of whether the undisclosed illegal search invalidated the subsequent search warrant.

### WARRANT—FRUIT OF THE POISONOUS TREE OR INDEPENDENT SOURCE?

Moore contends that the subsequent search warrant did not cure the original illegal search. *State v. Bean, supra; State v. Jones,* 22 Wn. App. 447, 591 P.2d 796 (1979). The State contends that probable cause to obtain the search warrant was established by other facts independent of Lynch's search. *State v. Wolohan, supra; United States v.*

---

[1]We reject the State's contention that Moore abandoned the luggage. Insufficient time elapsed after Moore missed the bus to demonstrate that he no longer retained his legitimate expectation of privacy in the contents. 1 W. LaFave, *Search and Seizure* § 2.6(b), at 369–70 (1978); *see State v. Wolohan,* 23 Wn. App. 813, 598 P.2d 421 (1979).

*Harris,* 501 F.2d 1 (9th Cir. 1974).

We have independently reviewed the record in this case and have concluded, as did the trial court, that Officer Lynch's illegal search was not requested by nor known to the investigating Seattle police officers. The deterrent effect of the exclusionary rule would not be advanced by suppressing evidence where, as here, the probable cause for the warrant was obtained independently of the illegal search and the investigating officers did not direct, request or know of the search.

Moore's reliance on *State v. Bean, supra,* and *State v. Jones, supra,* is misplaced. In those cases, the police officers unlawfully remained inside secured premises awaiting the receipt of a warrant to search. The officers' conduct was characterized as an unlawful, warrantless inchoate seizure of all property on the premises. The affiant in each case knew about the entry into the home, and the subsequently obtained search warrant did not convert the unlawful seizure into a constitutionally valid one.

*Bean* and *Jones* stand for the proposition that the existence of probable cause to search prior to an unlawful search is insufficient to sustain a subsequent search pursuant to a warrant where the affiant participated in or knew of the illegal search. Here, the affiant was unaware of the prior illegal search. Furthermore, the unlawful invasion of privacy was more extensive in *Bean* and *Jones* where private residences were unlawfully entered. We hold that a warrant to search personal luggage is valid despite the occurrence of a prior illegal search where the affiant does not request or know of the illegal search and has information demonstrating probable cause derived from sources independent of the illegal search. *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963); *State v. O'Bremski,* 70 Wn.2d 425, 423 P.2d 530 (1967); *State v. Wolohan, supra.*

This would be a different case had the prior illegal search led to the discovery of some of the facts relevant to probable cause. The police may not obtain probable cause

through illegal conduct and then attempt to conceal that conduct by presenting the facts to an officer unaware of the illegal behavior for presentation to a magistrate. *See State v. Johnson,* 16 Wn. App. 899, 559 P.2d 1380 (1977). We find the following rationale in *Cruse v. State,* 584 P.2d 1141, 1145 (Alaska 1978) persuasive:

> We must determine whether the subsequent search warrant issued as a product of the prior allegedly illegal trunk search. Although the state has the ultimate burden of persuasion on the issue of whether the subsequently obtained evidence was untainted by the prior illegality, the defendant has the initial burden of demonstrating by specific evidence that the evidence about which he complains grew out of the illegal search. Here, the causal connection between the illegal search and the subsequent warrant is tenuous. The controverted evidence here was obtained through information wholly independent of the initial trunk search. The evidence presented to the district court in support of the search warrant was procured without resort to any clue or knowledge gained from the trunk search. The investigation leading to the lawful search was not intensified or significantly focused by reason of any tainted information. Moreover, there was no exploitation of the alleged misconduct to discover new evidence as prohibited by *Wong Sun v. United States, supra.* The exclusionary rule extends only to those facts which were actually discovered through a direct process initiated by the unlawful act. Where the disputed evidence stems from an independent and lawful source, even though it could have emerged from the prior unlawful search as well, the evidence is admissible. Therefore, we hold that the trial court did not err in denying appellant's motion to suppress the results of the warrant search.

(Footnotes and citations omitted.)

### MISSTATEMENTS IN THE AFFIDAVIT

Moore contends that the affidavit for the search warrant was defective in that it omitted any reference to a prior illegal search or knowledge of a gun inside the luggage. In light of our independent review of the record revealing no such knowledge by the affiant, this omission is not subject

to challenge. There was no intentional or reckless disregard of the truth. *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

■ Moore also alleges bad faith in an erroneous statement in the affidavit that the luggage was seized at the time of the arrest. This misstatement, however, may be excised without affecting the existence of probable cause to search. *State v. Sweet,* 23 Wn. App. 97, 596 P.2d 1080 (1979). Furthermore, the Seattle officers, who were not present at the arrest, may have reasonably believed that the luggage was seized at the time of the arrest. *Franks v. Delaware, supra.*

The trial court did not err in admitting the evidence seized from Moore's luggage.

### IMPEACHMENT BY PRIOR CONVICTION

At trial, Moore made a motion in limine to bar the prosecutor from impeaching his credibility by inquiring about a prior robbery conviction in Tennessee. Moore offered to stipulate that he had previously been convicted of a felony provided that the nature of the offense was not mentioned. The court denied Moore's motion and stated:

> THE COURT: Rule 609, and again, I have some problem with it, but I believe the rule is quite explicit, and I grant to counsel that there is no way to say that this is for credibility only, but under Rule 609 the State is entitled to bring in the conviction and what type conviction, what it's for.
>
> [DEFENSE COUNSEL]: I would just add that 609 clearly gives the Court discretion to permit that.
>
> THE COURT: Yes, sir, and I think that the discretion, and I do find that the probative value outweighs the prejudicial effect, I think that is the way in fact Rule 609 reads.

Solely because of this ruling, Moore chose not to testify and made the following offer of proof:

> Okay. The defendant, if called to testify, would testify that he arrived in Seattle sometime in December. He lived in Seattle, he spent a substantial amount of time at the Trailways Bus Station in Seattle just visiting with Mr. Wright and Mr. Kemp, who will testify; that some-

time around the first part of January he moved to Tacoma. I am sorry, the 14th of January he moved to Tacoma. He was living in Tacoma at first at the Missions and then at the Lincolnshire Hotel; that on January 24th, 1980, he did not come to Seattle, he did not rob the Trailways Bus Station; that he decided to go to Portland the next day and that on January 25th, 1980, while eating breakfast at a restaurant, he met three men, one of whom sold him a bus ticket to Salt Lake City. The man who sold him the ticket told him that that bus ticket had been obtained fraudulently from the Department of Social and Health Services, in which he had told Mr. Moore that these people had died in Salt Lake City, and this is what he told the Department, and that he needed to get there and back, that he obtained a fraudulent ticket, that he sold it to Mr. Moore at a substantial discount; that Mr. Moore attempted to trade that ticket in to get a refund for that ticket, knowing that he was essentially buying what he assumed was a hot ticket and that, of course, he was arrested at the Trailways Bus Station in Tacoma on January 25th, and that would be the nature of his testimony.

Mr. Wright and Mr. Kemp, employees of Trailways Bus Company, both testified to Moore's frequent presence in the bus station beginning in early December. A third defense witness testified that Moore rented a room in Tacoma on January 18, 1980. This witness recalled seeing Moore at about 1 p.m. on January 24 and recalled Moore's statement that he would be leaving town the next day. None of these witnesses, however, could testify concerning the alleged purchase of the bus ticket from a man in a restaurant.

Moore contends that the trial court denied him a fair trial and abused its discretion when it held that his prior conviction for an offense identical to the present charge could be used for impeachment. ER 609(a); *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980); *Gordon v. United States,* 383 F.2d 936 (D.C. Cir. 1967), *cert. denied,* 390 U.S. 1029, 20 L. Ed. 2d 287, 88 S. Ct. 1421 (1968); *United States v. Smith,* 551 F.2d 348, 39 A.L.R. Fed. 539 (D.C. Cir. 1976). The State argues that without impeachment, the jury could

have assumed the testifying defendant was an ordinary, law–abiding citizen[2] and that impeachment is particularly important in a case that ultimately turns on credibility.

ER 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross–examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Robbery is not a crime involving "dishonesty or false statements," *United States v. Smith, supra.* The trial court was required to rule on admissibility exercising its "discretion as circumscribed by ER 609." *State v. Alexis, supra* at 16. We hold that the trial court erred by not considering all relevant factors under the rule.

■ We first note that the mere conclusion by the trial court that the probative value of the evidence outweighs the prejudice to the defendant is not enough to demonstrate a proper exercise of discretion. The same unsupported conclusion was reached by the trial court that was reversed in *Alexis.*

> It seems to us, a major factor to be considered in the balancing procedure is a comparison of the importance that the jury hear the defendant's account of events with the importance that it know of his prior conviction. In this case for example, unless the defendant testifies it is highly unlikely that his version of the matter will get before the jury. Thus, while we believe it important that Alexis testify, we also believe it equally important that the jury be fully able to evaluate his credibility as a witness.

---

[2]We strongly disapprove of this particular argument because it reveals that the State is actually seeking to improperly use impeachment to convince the jury that because the defendant did it once, he probably did it again. It rides roughshod over the presumption of innocence.

Some other factors that may be considered in weighing probative value of credibility against potential prejudice include: (1) the length of the defendant's criminal record; (2) remoteness of the prior conviction; (3) nature of the prior crime; (4) the age and circumstances of the defendant; (5) centrality of the credibility issue; and (6) the impeachment value of the prior crime. In each case, the balancing procedure should be followed. There is no place for a per se rule.

(Citations omitted.) *Alexis,* at 19. The *Alexis* court also held that a cautionary instruction is not always sufficient to overcome the tendency of the evidence to unduly influence the jury.

The trial court here fashioned a per se rule of admissibility by granting a right to impeach by prior conviction despite also finding that the jury would tend to improperly use the prior conviction as evidence of guilt. The court did not articulate the factors, if any, that it considered in reaching its bald conclusion that the probative value outweighs the prejudice to the defendant. When presented with Moore's offer of proof, the court summarily affirmed its prior ruling without considering the inability of Moore to place that evidence before the jury by another means. The court did not inquire into such manifestly relevant concerns as the circumstances of the prior offense as they relate to credibility and the special danger of allowing impeachment by evidence of convictions of a crime identical to the one charged. *State v. Renfro,* 28 Wn. App. 248, 622 P.2d 1295 (1981). The trial court also did not consider the slight probative value of assaultive crimes to veracity and the enhanced danger of prejudice by allowing impeachment in a case that ultimately turns on the credibility of the defendant. *State v. Renfro, supra.*

Finally, the trial court refused to consider Moore's offer to admit a prior felony conviction without naming the offense. The availability of other means of testing the accused's credibility is another relevant factor in the balancing process.

It seems to us the availability of other evidence to test

Alexis' credibility should he testify, taken together with the potential for great prejudice created by the admission of his prior rape conviction, would outweigh the probative value the conviction would have as to his credibility in this case as a witness. That, however, is a matter for initial determination by the trial court.

*Alexis,* at 20.

The court in *Alexis* had the benefit of a prior trial, but declined to rule on admissibility without giving the trial court the opportunity to exercise its discretion. Consistent with *Alexis,* we remand this matter for a hearing because the trial court's initial ruling was made without the guidance of the Supreme Court's interpretation of ER 609. A ruling in favor of admissibility will leave the original judgment intact. A ruling excluding the evidence will require granting Moore a new trial.

Remanded for further proceedings consistent with this opinion.

JAMES, C.J., and CALLOW, J., concur.

Reconsideration denied June 16, 1981.

Review denied by Supreme Court September 25, 1981.