# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49912-6-II |
| Respondent, | |
| v. | |
| RANDY GENE RICHTER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Randy G. Richter appeals the trial court's order denying his motions for post-judgment relief. Richter argues that the trial court erred by denying his first CrR 7.8 motion and by failing to hold an evidentiary hearing on his first CrR 7.8 motion. In a statement of additional grounds (SAG),[1] Richter argues that (1) the trial court erred in denying his CrR 7.5 motion, (2) the trial court erred in denying his second CrR 7.8 motion, (3) the trial court erred by failing to hold an evidentiary hearing on his second CrR 7.8 motion, and (4) he received ineffective assistance of appellate counsel. We affirm the trial court.

## FACTS

A. CHARGES, PLEA OFFER, AND TRIAL

In September 2013, Richter was charged by amended information with three counts of Violation of the Uniform Controlled Substances Act (VUCSA) for delivery of a controlled

---

[1] RAP 10.10.

substance, each with a school bus stop enhancement, and one count of VUCSA for possession of a controlled substance with intent to deliver. The State included with each count an aggravating factor that Richter's high offender score would result in some of the current offenses going unpunished. The charges stemmed from a series of three controlled buys set up by the Longview Police Department, during which Richter sold methamphetamine to a confidential informant (CI) and was arrested while possessing methamphetamine in his vehicle.

Soon after charges were filed, the State offered a plea agreement to Richter and his defense attorney. In exchange for a guilty plea on three counts of VUCSA for delivery of a controlled substance, the State would recommend a sentence of 90 months. The plea agreement stated that Richter's standard sentencing range under the plea offer was 60-120 months and that his standard sentencing range as charged was 132-192 months.

At the first pre-trial hearing, Richter expressed displeasure with his attorney. Richter stated that his attorney was "bringing up plea bargains that [he was] not taking." Verbatim Report of Proceedings (VRP) (Oct. 21, 2013) at 3-4. Richter further stated:

> I don't want to take a plea bargain. I'm trying to fight this case, and it has been brought to my attention that he doesn't want to do that, and so I just don't feel we have the same opinion on my guiltiness or innocence of this case. And I would like to request, if at all possible, some kind of a different attorney, please.

VRP (Oct. 21, 2013) at 4. Richter's first appointed attorney, as well as his second appointed attorney, withdrew due to a conflict. Bruce Hanify was then appointed to represent Richter and continued to represent Richter through trial.

The jury found Richter guilty as charged. The trial court imposed a sentence of 240 months of total confinement–168 months each for the four counts of VUCSA, to run concurrently, and 24 months each for the three school bus stop enhancements, to run consecutively.

Richter appealed his convictions. After review, we affirmed Richter's convictions but remanded the case to the trial court to vacate two of the school bus stop enhancements and for resentencing.

C.     REMAND, POST-TRIAL MOTIONS, AND SECOND APPEAL

On remand, Richter filed a CrR 7.5 motion for a new trial and a CrR 7.8 motion for relief from judgment. Richter supported his CrR 7.8 motion with a declaration, which stated:

> I was represented by Bruce Hanify in this case. I was aware that these charges were serious, but I believed that the most time I could get sentenced to if convicted was 10 years. . . . [Hannify] did explain to me that I had an offer for about seven and a half years. . . . I did not see 7.5 as a significant difference from 10 years. At no time was I made aware that the statutory maximum was actually 20 years. Mr. Hanify may have mentioned an exceptional sentence, but it was never explained to me what that meant. I did not know that the judge could go up to 20 years if we lost.

Clerk's Papers (CP) at 126. The State filed a response to Richter's CrR 7.8 motion and included a declaration from Hanify, which stated:

> In response to Mr. Morgan's inquiries in August, 2014 about whether I specifically advised Mr. Richter of the possibility of his sentence being doubled under RCW 69.50.435, I told Mr. Morgan that I cannot specifically recall mentioning that statute. On the other hand, I can state with certainty that I advised Mr. Richter of the following:
>
> That he was charged with FOUR Class B felonies. The maximum imprisonment for each count would be 10 years/$20,000.
>
> Given that his offender score at that time was 28, his OTHER CURRENT OFFENSES would potentially push his offender score at sentencing to 37.

> In any case, given the sentencing standards of the SRA, NO JUDGE would give him the same sentence they would give a person with an offender score of nine or less. It would be completely unrealistic to expect any sentence of less than 20 years. In fact, one might well be sentenced to 40 years or more, depending on different factors (pre-Conover). It remains my belief that it would be unreasonable for any person in Mr. Richter's situation to expect any sentence to be less than 20 years, and I told him so more than once.
>
> Mr. Richter was shown and we discussed the prosecution's offer of 84 months on multiple occasions. He was told on several occasions that a post-trial sentence commensurate with the prosecution's offer of 84 months was not possible following a trial, except under the most extraordinary of circumstances, none of which seemed plausible to me. My intent always was to communicate to Mr. Richter the basic SRA policy of ensuring "that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history. (RCW 9.94A.010(1)." In Mr. Richter's case, that almost certainly would have resulted in a sentence above 20 years.

CP at 163.

At the hearing on the motions, Richter stated that additional testimony was not necessary and that he was willing to rely on the affidavits submitted. The trial court denied Richter's CrR 7.5 motion for a new trial. The trial court also denied Richter's CrR 7.8 motion for relief from judgment. The trial court included Hanify's declaration in its findings of fact. The trial court concluded that "Hanify did explain to the defendant that he was potentially facing a 20 year sentence upon conviction." CP at 209. The trial court also concluded that Hanify's advice did not fall below an objective standard of reasonableness, that Richter was not prejudiced by Hanify's advice, and that Richter did not receive ineffective assistance of counsel.

Richter then filed a second CrR 7.8 motion for relief from judgment. With his second CrR 7.8 motion, Richter included an affidavit alleging that he told Hanify about a witness, Sean Greiner, who would testify that the CI fabricated the charges against Richter. Richter also included

a declaration from Greiner, which stated that Greiner had been willing to testify that the CI fabricated the charges. The State filed a response to Richter's second CrR 7.8 motion and included an unsigned declaration from Hanify. The unsigned declaration stated that Hanify decided not to contact Greiner because he "believed that if I called Mr. Greiner, I would not only subject Mr. Greiner to adverse impeachment, I would also quite possibly expose Mr. Richter to one or more additional felony charges of Tampering with a Witness, or in addition ER 404(b) testimony." CP at 198. He also believed Greiner's testimony was inconsistent with the defense theory of the case.

The trial court held a hearing on the motion. Richter argued that Hanify provided ineffective assistance because he did not contact Greiner and Greiner could have provided compelling evidence to the jury. Richter did not object to the submission or consideration of the unsigned declaration. And Richter relied on Hanify's own statements that he decided not to interview Greiner.

The trial court found that at each controlled buy, the CI "met with [Richter] and a hand-to-hand exchange took place." CP at 203. The trial court also found that "[e]ach of the three controlled buys was captured on video by one of the investigating detectives" and that "[t]he third controlled buy was recorded by an audio recording device." CP at 204. After Richter was arrested, the police searched his vehicle pursuant to a search warrant and found Richter's backpack, "which contained a digital scale with residue, baggies, and a lockbox that contained a bag of methamphetamine." CP at 204. The trial court concluded that (1) it was questionable whether Greiner was available to testify because he had an active warrant for his arrest, (2) Hanify's failure to contact Greiner was a trial strategy, (3) Richter was not prejudiced by Hanify's failure to contact

5

Greiner because there was not a reasonable probability the outcome of the trial would have been different had Greiner been called as a witness, and (4) Hanify's representation of Richter did not fall below and objective standard of reasonableness. Accordingly, the trial court ruled that Richter did not receive ineffective assistance of counsel and denied Richter's second CrR 7.8 motion.

Richter appeals.

## ANALYSIS

### A.    DENIAL OF FIRST CrR 7.8 MOTION: INEFFECTIVE ASSISTANCE OF COUNSEL

Richter argues that the trial court abused its discretion when it denied his first CrR 7.8 motion for relief from judgment because Hanify provided ineffective assistance by failing to advise him of the possibility of a sentence beyond 10 years. Specifically, Richter argues that the trial court erred in its conclusions because its findings do not address *when* Hanify informed Richter of the maximum sentence he faced. We disagree.

#### 1.    Legal Principles

We review a trial court's decision on a CrR 7.8 motion for an abuse of discretion. *State v. Smith*, 159 Wn. App. 694, 699, 247 P.3d 775 (2011). We review a trial court's factual findings on a CrR 7.8 motion for substantial evidence. *State v. Ieng*, 87 Wn. App. 873, 877, 942 P.2d 1091 (1997), *review denied*, 134 Wn.2d 1014 (1998). Substantial evidence is a sufficient quantity of evidence to persuade a rational, fair-minded person that a finding is true. *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). Unchallenged findings of fact are verities on appeal.[2] *State*

---

[2] Richter does not assign error to any of the trial court's findings of fact. Rather, Richter argues that facts do not support the trial court's conclusion that Richter failed to demonstrate he received ineffective assistance of counsel.

*v. Pippin*, 200 Wn. App. 826, 834, 403 P.3d 907 (2017). And we defer to the trial court on credibility issues. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

We also review a trial court's conclusions of law de novo to see if they are supported by the findings. *Ieng*, 87 Wn. App. at 877. When a statement of fact is included in a conclusion of law, we treat it as a finding of fact. *State v. Marcum*, 24 Wn. App. 441, 445, 601 P.2d 975 (1979).

Under CrR 7.8(b)(5), a trial court also may relieve a party from a final judgment, order, or proceeding for "[a]ny other reason justifying relief from the operation of the judgment." These other reasons are limited to "extraordinary circumstances not covered by any other section of the rule." *Smith*, 159 Wn. App. at 700. Such circumstances include ineffective assistance of counsel. *State v. Gomez Cervante*s, 169 Wn. App. 428, 434, 282 P.3d 98 (2012).

A claim of ineffective assistance of counsel is a mixed questions of law and fact. *State v. Lopez*, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018). To establish ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to establish either prong of the test ends our inquiry. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). There is a strong presumption of effective assistance, and the defendant bears the burden of rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 336-37. "In the

plea bargaining context, counsel must communicate actual offers, discuss tentative plea negotiations, and discuss the strengths and weaknesses of the defendant's case so that the defendant knows what to expect and can make an informed decision on whether to plead guilty." *State v. Edwards*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012).

To show prejudice, the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. In the plea bargaining context, the defendant must demonstrate a reasonable probability that he would have accepted the offer. *Edwards*, 171 Wn. App. at 394.

2. No Deficient Performance

Richter does not challenge the trial court's finding that Hanify told him that his maximum sentence was 20 years. Rather, Richter argues that, the trial court did not find, and Hanify did not indicate, when Hanify told Richter that he could expect a sentence above 20 years. Richter claims that Hanify failed to provide effective assistance of counsel when Richter was considering his plea agreement.

A review of Hanify's declaration shows that Hanify did inform Richter of the maximum sentence of 20 years during consideration of the State's plea offer. In the last paragraph of his declaration, Hanify stated that he showed and discussed the offer with Richter on multiple occasions. In the same paragraph, Hanify describes what he told Richter, which included that a sentence after trial would almost certainly be above 20 years. This shows that Hanify advised Richter about the possibility of a sentence above 20 years when the offer was still on the table

before trial.  Thus, this argument is not persuasive and does not show the trial court erred by concluding Richter did meet his burden to show ineffective assistance of counsel.  Therefore, the trial court did not abuse its discretion in denying Richter's first CrR 7.8 motion.[3]

B.    HEARING REQUIREMENT UNDER CRR 7.8

Richter argues that the trial court misapplied CrR 7.8 and erred during the first motion hearing because CrR 7.8(c)(3) required the trial court to hold a factual hearing.  We disagree.

We review the trial court's application of a court rule de novo.  *In re Dependency of M.H.P.*, 184 Wn.2d 741, 753, 364 P.3d 94 (2015).  Under CrR 7.8(c)(1), a request for relief from judgment "shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based."  The trial court shall transfer the motion to this court "for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing."  CrR 7.8(c)(2).  If the trial court does not transfer the motion, "it shall enter an order fixing a time and place for hearing and directing the adverse party to appear and show cause why the relief asked for should not be granted."  CrR 7.8(c)(3).

Here, the trial court found that the motion was timely and held a hearing on the motion.  Thus, the trial court held a hearing and did not misapply CrR 7.8.

---

[3] We note that Richter argues he would have accepted the State's plea offer if he knew he could receive a 20-year sentence.  Richter cites to the declaration he filed with his first CrR 7.8 motion, which states that he would have done so.  However, despite the declaration, Richter fails to prove that he would have accepted the plea offer.  The record also includes Richter stating that he did not want to take a plea offer and wanted to fight the case.

Richter argues that "CrR 7.8 anticipates a 'factual hearing' involving more than a mere review of the affidavits" and that the hearing in his case "was not a 'factual hearing' as anticipated by CrR 7.8." Br. of Appellant at 14. Richter supports this claim by arguing that the trial court did not swear in any witnesses or admit any evidence and that it did not do anything different than what this court would have done had the motion been transferred. However, Richter does not cite to any legal authority that requires the trial court to swear in witnesses or admit evidence. In fact, Richter stated at the beginning of the hearing that additional testimony was not necessary and that he was willing to rely on the affidavits submitted. Richter's CrR 7.8 challenge fails.

C.    SAG Claims

Richter raises four additional claims in his SAG: (1) the trial court erred in denying his CrR 7.5 motion for a new trial,[4] (2) the trial court erred by denying his second CrR 7.8 motion, (3) the trial court erred by denying his second CrR 7.8 motion without an evidentiary hearing, and (4) he received ineffective assistance of appellate counsel. Richter's SAG claims do not require reversal.

1.    Denial of CrR 7.5 Motion

Richter argues that the trial court abused its discretion in denying his CrR 7.5 motion for a new trial because the trial court did not address the State's misconduct in failing to disclose all of the benefits received by the CI, which violated *Brady*.[5] We disagree.

---

[4] Richter also argues that his counsel "erroneously submitted the [CrR] 7.5 motion for a new trial under CrR 7.5(9)(2)(a)(3) [sic]" and that the motion should have been "designated solely under CrR 7.5(a)(2) prosecutorial misconduct." Statement of Additional Grounds (SAG) at 2. However, Richter filed his CrR 7.5 motion pro se. Therefore, any errors in the CrR 7.5 motion cannot be the basis for an ineffective assistance of counsel claim.

[5] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

We review a trial court's decision whether or not to grant a new trial for an abuse of discretion. *State v. Hawkins*, 181 Wn.2d 170, 179, 332 P.3d 408 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Larson*, 160 Wn. App. 577, 586, 249 P.3d 669 (2011).

CrR 7.5(b) requires a motion for a new trial be brought within 10 days of the verdict. Because Richter brought his CrR 7.5 motion years after the verdict, the motion was untimely. Therefore, the trial court did not abuse its discretion by denying Richter's CrR 7.5 motion for a new trial.

2.      Denial of Second CrR 7.8 Motion

Richter claims that the trial court abused its discretion in denying his second CrR 7.8 motion for relief from judgment because the trial court relied on Hanify's unsigned declaration. And Richter claims he received ineffective assistance of counsel because Hanify failed to disclose to him that he did not contact and was not going to call three potential witnesses. We disagree.

a.      Unsigned declaration

A party waives any error by failing to object or strike improper portions of an affidavit. *Podbielancik v. LLP Mortg. Ltd.*, 191 Wn. App. 662, 666, 362 P.3d 1287 (2015). "[T]o preserve an error for appeal, counsel must call it to the trial court's attention so the trial court has an opportunity to correct it." *In re Det. of Strand*, 139 Wn. App. 904, 910, 162 P.3d 1195 (2007), *aff'd*, 167 Wn.2d 180 (2009).

11

Here, Richter not only failed to object to Hanify's unsigned declaration, but he repeatedly relied on the facts in Hanify's declaration to support his argument. Because Richter did not object to Hanify's unsigned declaration, he has waived the claimed error.

        b.        Ineffective assistance for failure to disclose

Richter now claims that Hanify failed to disclose to him that Hanify did not contact and was not going to call three potential witnesses. Richter did not raise this argument before the trial court. A review of Richter's motion and the hearing transcript shows that Richter only argued that Hanify failed to contact one witness, Greiner. A trial court cannot grant a CrR 7.8 motion based on an argument that was not raised, and it does not abuse its discretion in denying such a motion based on an argument that was not raised. Therefore, Richter's claim fails.

        3.        Evidentiary Hearing on Second CrR 7.8 Motion

Richter claims that the trial court misapplied CrR 7.8 by failing to hold an evidentiary hearing for his second CrR 7.8 motion. Like Richter's argument regarding the application of CrR 7.8 for his first motion for relief from judgment, the trial court held a hearing for his second motion and Richter fails to provide any actual legal authority or support showing that the trial court was required to do anything more.

        4.        Ineffective Assistance of Counsel

Richter claims that he received ineffective assistance of counsel from appellate counsel on appeal. Richter asserts that appellate counsel on appeal provided ineffective assistance because he failed to provide him with the clerk's papers or designation of clerk's papers and failed to perfect the record on appeal. However, this claim involves matters outside of the record; thus, it

12

No. 49912-6-II

is properly raised in a personal restraint petition, rather than a SAG. *McFarland*, 127 Wn.2d at 335. As a result, we decline to address this claim.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Maxa, C.J.