[No. 13814-6-I. Division One. December 10, 1984.]

THE STATE OF WASHINGTON, *Appellant,* v. KENNETH JAMES O'CONNOR, ET AL, *Respondents.*

114

*Seth Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for appellant.

*Zsa Zsa DePaolo* of *Washington Appellate Defender Association,* for respondent O'Connor.

*Tom Conom,* for respondent Shostad.

COLEMAN, J.—The State appeals from an order of the trial court suppressing evidence seized pursuant to a search

warrant, and from the court's subsequent order dismissing possession of stolen property charges filed against respondents O'Connor and Shostad.

On January 31, 1983, Wade Walthew, acting at the direction of the Mountlake Terrace Police Department, made a controlled purchase of an allegedly stolen cassette player from William Lance. Immediately thereafter, Mountlake Terrace Police Detective Maurice Noll arrested Lance. Prior to that date, Detective Noll had had no contact with William Lance, and William Lance had provided no information to Detective Noll. When asked where he had acquired the cassette player, Lance initially said that he had stolen it out of a car. Detective Noll told Lance that he did not believe him. After being confronted with his false statement, Lance stated that he had been receiving stolen property from respondent O'Connor at O'Connor's residence. He also said that he had been selling stolen property for O'Connor for over a year, and that O'Connor always had stolen property at his apartment. In addition, Lance said that O'Connor had told him that several items in his apartment were stolen in residential burglaries.

Prior to executing an affidavit for search warrant, Detective Noll attempted to verify that the cassette player purchased from Lance was stolen. A computer check proved negative. He then contacted Detective Knight of the Lynnwood Police Department who advised him that the cassette player matched the description of one that had been stolen in a burglary, but Knight was not able to definitely say whether it was the same one. In Detective Noll's affidavit for issuance of the search warrant, he asserted that the cassette player was stolen. There was no reference in the affidavit to Lance's initial statement that he had obtained the cassette recorder from an automobile.

On the basis of Detective Noll's affidavit, a district court judge issued a search warrant and Kenneth O'Connor's residence was searched. Eric Shostad was in O'Connor's house at the time of the search. The search uncovered several items of stolen property, and O'Connor and Shostad were

subsequently charged with possession of stolen property.

Prior to trial, respondents moved to suppress the evidence seized pursuant to the search warrant. The trial court concluded that Detective Noll's affidavit did not contain sufficient evidence of Lance's veracity and, based upon that conclusion, an order was entered suppressing the evidence for lack of probable cause to issue the search warrant. The State asserted that it could not proceed with the case in view of the court's suppression ruling, and a dismissal with prejudice was thereafter entered.

The State assigns error to the trial court's consideration of matters not contained within the affidavit for search warrant, and to the trial court's conclusion that the affidavit did not contain sufficient information to justify a finding of probable cause. Error is assigned to the subsequent suppression order and the dismissal of the charges resulting therefrom. Respondent Shostad cross–appeals assigning error to the trial court's conclusion that any misrepresentation concerning the allegedly stolen cassette player was not a material misrepresentation, and to the trial court's conclusion that any misrepresentations in the affidavit for search warrant were not made deliberately or recklessly. The following issues are presented for our resolution:

1. Was Detective Noll's statement that the stereo cassette player was "stolen" an intentional or reckless misstatement of a material fact?

2. Was Detective Noll's failure to include Lance's initial untruthful statement in the search warrant affidavit an intentional or reckless omission of a material fact?

3. May the trial court, following a finding that the search warrant affidavit did not contain reckless or intentional misstatements of any material fact, consider matters not contained in the affidavit in determining whether the affidavit supported a finding of probable cause?

4. Was Lance's statement against penal interest sufficient under the facts of this case to establish his veracity?

Washington courts have consistently held that misstatements or omissions in affidavits supporting search

warrants may only affect a warrant's validity if they are (1) material, and (2) made deliberately or recklessly. *State v. Seagull,* 95 Wn.2d 898, 907–08, 632 P.2d 44 (1981); *State v. Moore,* 29 Wn. App. 354, 361–62, 628 P.2d 522, *review denied,* 96 Wn.2d 1003 (1981). In *State v. Sweet,* 23 Wn. App. 97, 100–01, 596 P.2d 1080, *review denied,* 92 Wn.2d 1026 (1979), we adopted the federal rule announced in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), governing the right to challenge the truthfulness of factual statements contained within search warrant affidavits. The *Franks* Court stated:

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross–examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks,* at 171. *Franks* and the relevant Washington decisions do not illuminate what constitutes "reckless" disregard for the truth. The parties to this appeal cite *United States v. Davis,* 617 F.2d 677 (D.C. Cir. 1979), *cert. denied,* 445 U.S. 967 (1980) for the proposition that recklessness is shown where the affiant "in fact entertained serious doubts as to the truth" of facts or statements in the affidavit. *Davis,* at 694 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968)). Under *Davis,* such serious doubts can be shown by (1) actual deliberation on the part of the affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

Applying this test to the case at bar, it is clear that no

actual deliberation was shown and that the affiant, Detective Noll, did not have obvious reasons to doubt whether the cassette player was stolen. The circumstances under which Lance acquired the cassette player and his immediate acknowledgment that he had in fact stolen it provided a reasonable basis to believe and to subsequently allege that the cassette player was in fact stolen property. Furthermore, the admissions were not undermined by the fact that the police investigation did not definitely identify the cassette player as stolen. An inconclusive investigation does not give an affiant obvious reasons to doubt the truth of his statement and the hearsay upon which the statement is based.

Essentially the same analysis applies to information intentionally or recklessly omitted from affidavits. *United States v. Martin,* 615 F.2d 318 (5th Cir. 1980). Negligent omissions will not undermine the affidavit. *United States v. Martin, supra* at 329; *see State v. Moore, supra* at 361–62. In this regard, the State offers three compelling reasons for finding the omission of Lance's initial untruthful statement immaterial and/or merely negligent. First, even if his statement had been included in the affidavit, it could have been deemed immaterial because it is not uncommon for an arrestee to initially minimize his or her own involvement in a crime or series of crimes. *People v. Barger,* 40 Cal. App. 3d 662, 115 Cal. Rptr. 298 (1974). Moreover, it would not be unusual for an individual to initially attempt to avoid implicating others in criminal activity. Second, the statement could have been discounted or ignored in light of the other indicia of reliability. Third, under *United States v. Melvin,* 596 F.2d 492, 499–500 (1st Cir. 1979), if Detective Noll genuinely believed that the omitted statement was irrelevant, even if that belief was mistaken, the omission was not reckless or deliberate.

The first two points above support a conclusion that Lance's initial statement was not "clearly critical" or material to the probable cause determination. The third point supports a finding that Detective Noll's omission, though

arguably negligent, was not reckless.

 Moreover, following consideration of the offer of proof, which included sworn testimony of Detective Noll, the trial court specifically found that Noll was at all times acting in good faith and that there were no material misstatements in the affidavit. It is also clear from the trial court's comments that it did not find any reckless omissions. It was error, however, for the trial court to consider matters not contained within the affidavit for search warrant in arriving at its determination on probable cause. Accordingly, in testing the search warrant affidavit on review, we confine our considerations to the information contained in the affidavit.

 We begin our analysis by noting that on September 6, 1984, the Washington Supreme Court filed its decision in *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). The *Jackson* court rejected the probable cause test announced in *Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) and held that the 2–prong test enunciated in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) is the test by which to judge search warrant affidavits in the state of Washington. It is well settled in Washington that admissions against penal interest are a relevant factor in probable cause determinations under the *Aguilar/Spinelli* test. *State v. Lair,* 95 Wn.2d 706, 711, 630 P.2d 427 (1981); *State v. Patterson,* 37 Wn. App. 275, 679 P.2d 416 (1984). Furthermore, such admissions are relevant indicia of an informant's veracity. *State v. Hett,* 31 Wn. App. 849, 852, 644 P.2d 1187, *review denied,* 97 Wn.2d 1027 (1982); *State v. Lair, supra* at 710–11; *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).[1]

Both parties correctly point out that no Washington

---

[1]Though the trial court referred to Lance's admissions as "arguably" against his interest, the briefs and the record indicate no real dispute as to whether Lance's statements were against his penal interest.

court has yet addressed the question of whether a named informant's admissions against penal interest are, in circumstances such as those presented here, sufficient to establish an informant's veracity. Respondents argue that an admission against penal interest must be accompanied by some independent corroboration of the informant's information before his veracity can be established. However, in *State v. Hett, supra,* the court held that an admission against penal interest made before a magistrate by a named informant was sufficient to establish veracity. There was no independent corroboration of the information. This decision is consistent with *State v. Lair, supra,* where the Washington Supreme Court stated that "even if nothing is known about the informant, the facts and circumstances under which the information is furnished may reasonably support an inference that the informant is telling the truth." *Lair,* at 710. Thus, although corroboration may be a factor in the veracity determination, Washington courts have never considered it a prerequisite to a reasonable inference of truthfulness. *See State v. Patterson,* 83 Wn.2d 49, 56, 515 P.2d 496 (1973). In any event, corroboration and admissions against penal interest are not the only indicia of veracity recognized by our courts.

The fact that an informant is named is also relevant to a finding of veracity. *State v. Hett, supra* at 852; *State v. Patterson,* 83 Wn.2d at 52; *State v. Lair, supra* at 712–13. In this regard, we agree with the reasoning of the court in *Merrick v. State,* 283 Md. 1, 389 A.2d 328 (1978). The *Merrick* court examined numerous decisions dealing with veracity and admissions against interest, and found the naming of an informant significant because: (a) the *Aguilar/Spinelli* strictures were aimed primarily at *unnamed* police informers; (b) the identification of the informant making an admission against penal interest makes him inherently more reliable than the unnamed police "stool pigeon" because the identified informant has reason to suspect that his admission may be used against him; (c) and in the majority of those cases in other jurisdictions in which

an admission against penal interest was found to be sufficient of itself or with other factors to show veracity, the informant was identified.

The *Merrick* analysis indicates that the naming of an informant is particularly relevant to veracity when, as in the present case, the named informant has made admissions against interest. Professor LaFave agrees, pointing out that where the admission against interest is made by a *named* informant "there is much more reason to conclude that the veracity prong of *Aguilar* is satisfied . . . Such persons do not have reason to believe that their admissions of criminal conduct will be ignored by the police . . ." 1 W. LaFave, *Search and Seizure* § 3.3, at 526–27 (1978). Thus, with respect to veracity, weight should be attached to the fact that Lance was named in the affidavit.

Also relevant to Lance's veracity is the fact that his statements were made while he was under arrest. *State v. Bean,* 89 Wn.2d 467, 471, 572 P.2d 1102 (1978). Professor LaFave distinguishes this factor from a mere admission against penal interest:

> [O]ne who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys. Thus, where the circumstances fairly suggest that the informant "well knew that any discrepancies in his story might go hard with him," that is a reason for finding the information reliable. In such a situation, it is the "clearly apprehended threat of dire police retaliation should he not produce accurately" more so than the admission of criminal conduct which produces the requisite indicia of reliability.

(Footnotes omitted.) 1 W. LaFave § 3.3, at 528–29. Thus, the reliability attached to admissions against penal interest may be greater in post–arrest situations because the arrestee admitting the crime risks disfavor with the prosecution if he lies. *United States v. Davis,* 617 F.2d 677, 693 (D.C. Cir. 1979), *cert. denied,* 445 U.S. 967 (1980). Citing *State v. Bean, supra,* respondent contends that there must be a leniency agreement before the arrestee has any motive

to be truthful. The *Bean* court found that the informant had a motive to be truthful because he had agreed to give information in exchange for a favorable sentencing recommendation. *State v. Bean, supra* at 469. However, the opinion does not announce adoption of a rule limiting consideration of arrestee veracity to those situations involving leniency agreements. Thus, we see no merit in respondents' contention that, absent a leniency arrangement, *Bean* precludes using the arrest situation in the present case as a factor supporting reliability. A leniency agreement may well provide an additional incentive to speak truthfully, but this does not mean that an arrest situation by itself has no effect on an informant's incentive to be truthful.

Finally, the amount and kind of detailed information given by an informant may also enhance his reliability. *State v. Patterson*, 37 Wn. App. 275, 278, 679 P.2d 416 (1984); *State v. Jessup*, 31 Wn. App. 304, 318, 641 P.2d 1185 (1982); *State v. Hett, supra* at 852. In both *Hett* and *Patterson*, juvenile/burglar informants gave detailed information to police after they were arrested. Both courts were concerned only with the veracity of the informants, and both listed the detailed nature of the informant's information as an indication of reliability.

The informant in the present case also gave a fairly detailed statement to the police which is set forth in the search warrant affidavit.[2] Lance named a specific person at

[2] "At 1640 hrs. January 31, 1983 Det. Noll arrested a subject by the name of William Douglas Lance, an adult male, [d]irectly after he had sold a stolen stereo cassette player to a Wade Walthew in Mountlake Terrace. Prior to the [s]ale Wade Walthew was given $150.00 to buy the equipment, from Det. Noll. After the sale William Douglas Lance was arrested with the money in his possession. William Lance was read his rights after being brought into the police station. William Lance stated to Det. Noll in a written statement that the stereo equipment came from a Kenneth O'Connor who lives at 5807 204th S.W. Apt 205 Lynnwood Wa. William Lance advised Det. Noll that Kenneth O'Connor has been involved in several burglaries in Mountlake Terrace and Lynnwood. William Lance advised that on Jan. 27, 1983 he was in Kenneth O'Connor['s] residence picking up the stolen cassette player, to sale today [*sic*]. William Lance at this time observed numerous other pieces of stereo equipment along with specifical[l]y a Sony Trinetron colored T.V., and a set of Klipch stereo speakers.

a specific residence. He recounted certain events occurring on the 27th of January and described by brand name certain items located at the above–mentioned residence. Such specific references, along with the other more general statements, support an inference of personal observation and make the possibility of fabrication and/or rumor less likely.

In summary, we have a detailed statement against penal interest by a named informant. Significantly, this statement was given following *Miranda*[3] warnings, thus establishing the arrestee/informant's awareness that his statements could be used against him in a criminal prosecution. We contrast this situation with those situations where an informant's statement is ambiguous or made under circumstances not necessarily indicating the potential for self–incrimination or criminal prosecution.

While we decline to adopt a rule providing that a statement against penal interest standing alone is sufficient to establish probable cause in all cases, the facts and circumstances here provided the magistrate with a reasonable basis upon which to issue the warrant. Both the superior court and this court are required to give great weight to a magistrate's determination that probable cause exists, *State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981), and doubts are to be resolved in favor of the warrant.

---

"William Lance states that these are items he can recall at this time.

"William Lance advised Det. Noll that Kenneth O'Connor has infact [*sic*] personally told him that several items in the apartment are stolen from residential burglaries.

"William Lance further advised that he has been selling stolen property for Kenneth O'Connor for over a one year period and that stolen property is always at the apartment.

"D[ue] to the length of time William Lance has been selling property for Kenneth O'Connor, it is believed that stolen items will be located in the apartment of Kenneth O'Connor.

"It is believed by this Affiant that the information obtained by William Lance is true and corre[c]t. William Lance has no prior arrest to this officer[']s knowledge."

[3]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

124

*United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

Given the result reached, we do not need to address the State's remaining assignment of error. The order suppressing evidence and the dismissal with prejudice are reversed, and the cause is remanded to the Superior Court for trial.

WILLIAMS and CALLOW, JJ., concur.

Review denied by Supreme Court March 1, 1985.