247 P.3d 797 (2011)
STATE of Washington, Appellant,
v.
Patrick Jimi LYONS, Respondent.
No. 28693-2-III.
Court of Appeals of Washington, Division 3.
February 10, 2011.
Kevin Gregory Eilmes, Prosecuting Attorney's Office, Yakima, WA, for Appellant.
John Adams Moore Jr., Attorney at Law, Yakima, WA, for Respondent.
SWEENEY, J.
¶ 1 The State appeals a superior court order suppressing evidence of a marijuana grow operation. The trial judge concluded that the affidavit used to support the search warrant was not sufficiently clear on whether the phrase "within the last 48 hours" referred to the time frame within which the informant saw the grow operation or whether, instead, the phrase referred to the time within which the informant reported the information to police. The judge concluded *798 that it referred to the latter not the former because of the sentence structure. We conclude that this was a hypertechnical reading of this affidavit that ultimately did not extend the deference required by a court of review to the issuing magistrate. And we therefore reverse the order of the trial court and remand for further proceedings.

FACTS
¶ 2 Yakima City/County Narcotics Unit (YCNU) Officer Gary Garza requested a search warrant based on his affidavit. He wanted to search the residence of Patrick Lyons. Officer Garza believed Mr. Lyons was manufacturing marijuana with the intent to deliver based on information provided by an informant.
¶ 3 In his affidavit, Officer Garza outlined his training and experience investigating drug crimes, described the residence, and identified an individual believed to be living at the residence known as "Jimmy." The affidavit went on to relate the officer's probable cause to believe that "Jimmy" was manufacturing, or possessed with intent to deliver, marijuana. Clerk's Papers (CP) at 58-60; Br. of Appellant at 3. Officer Garza represented that his probable cause was based upon the following information:
Within the last 48 hours a reliable and confidential source of information (CS) contacted YCNU Detectives and stated he/ she observed narcotics, specifically marijuana, being grown indoors at the listed address. The CS knows the suspect and homeowner as "Jimmy". The CS observed the growing marijuana while inside an outbuilding on the property of the listed residence. The CS observed the marijuana growing in potted soil under active lighting designed to promote plant growth.
CP at 60.
¶ 4 Judge Donald Engel issued a warrant to search the property. Police found a fully operational marijuana grow operation along with a number of plastic baggies containing marijuana and two large containers of mushrooms. The State charged Mr. Lyons with one count of manufacturing a controlled substance (marijuana), one count of possession of a controlled substance with intent to deliver (mushrooms), and one count of possession of a controlled substance with intent to deliver (marijuana).
¶ 5 Mr. Lyons moved to suppress the drug evidence. The superior court judge made some preliminary observations: "I suspect that Judge Engel did not have the benefit of your briefing or the opportunity to hear a critical discussion about the language that was used. . . . [W]e have these procedures so we can review more carefully the warrants that are applied for." Report of Proceedings (Nov. 3, 2009) (RP) at 18. And the superior court then went on to analyze Officer Garza's affidavit and the specific language in question as follows:
If you call that a run on sentence or two sentences blended together with the conjunctive and, but if you break it apart, it's within the last 48 hours a reliable confidential source of information contacted detectives, period. He observed narcotics being grown. So it shiftsas I read it, it shifts to the word being, but there is noto use [defense counsel's] phrase, no temporal reference to what being means.
RP at 18-19. The judge then concluded that "Officer Garza has simply said that he contacted law enforcement within the last 48 hours. We have absolutely no idea when he made the observation." RP at 19. The superior court then concluded that the affidavit was not sufficient to support the search warrant and the court suppressed the drug evidence. The State now appeals this ruling.

DISCUSSION
¶ 6 The superior court judge sat in the same capacity that we sit, in an appellate capacity. See State v. O'Connor, 39 Wash. App. 113, 123, 692 P.2d 208 (1984). So the standard of review we bring to bear on Judge Engel's warrant and the canons of construction that dictate how we read and interpret Officer Garza's affidavit were the same for the superior court as they are for this court. See id.
¶ 7 The State contends that Judge Engel's reading of Officer Garza's affidavit reflects common sense rather than a prohibited hypertechnical reading of the affidavit. The *799 State argues that, when so read, the logical and reasonable inference is that the informant both observed the growing marijuana and related that fact to the detective within the 48-hour period before the affidavit was signed. Br. of Appellant at 10. Mr. Lyons responds that Officer Garza's affidavit simply told Judge Engel that the informant reported his information to the officer within 48 hours; it did not tell the judge with any precision when the informant saw the growing marijuana. And, therefore, the affidavit fails to establish probable cause to believe that the drugs would be present on the property when Judge Engel issued the warrant.

STANDARD OF REVIEWCANONS OF CONSTRUCTION
¶ 8 We will not reverse a magistrate's determination of probable cause absent a showing that the judge abused his discretion. State v. Condon, 72 Wash.App. 638, 642, 865 P.2d 521 (1993). We are required to give the magistrate's determination of probable cause great deference. State v. Griffith, 129 Wash.App. 482, 487, 120 P.3d 610 (2005).
Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant," ibid., and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude that narcotics were probably present."
Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (alteration in original) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). Simply put, the courts should encourage police officers to seek judicially sanctioned search warrants. And deferring to a judicially sanctioned search warrant does just that. State v. Chenoweth, 160 Wash.2d 454, 477-78, 158 P.3d 595 (2007).
¶ 9 Just as importantly, the information collected here "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
¶ 10 "The support for issuance of a search warrant is sufficient if, on reading the affidavits, an ordinary person would understand that a violation existed and was continuing at the time of the application." State v. Clay, 7 Wash.App. 631, 637, 501 P.2d 603 (1972).

OFFICER GARZA'S AFFIDAVIT
¶ 11 The difficulty here is that the warrant does not clearly state the time between the informant's observations and the filing of the affidavit. It states, "Within the last 48 hours a reliable and confidential source of information (CS) contacted YCNU Detectives and stated he/she observed narcotics, specifically marijuana, being grown indoors at the listed address." CP at 60. But the superior court's approach would bring a rigor to the appellate analysis that we conclude is discouraged by both the deferential standard of review and the canons by which we are required to read these affidavits. Again, the superior court reasoned in part:
I suspect that Judge Engel did not have the benefit of your briefing or the opportunity to hear a critical discussion about the language that was used. . . . [W]e have these procedures so we can review more carefully the warrants that are applied for.
RP at 18. The court was correct no one filed a brief or argued over what appeared clear on the face of the affidavit.
¶ 12 The superior court then felt free to parse the words used by Officer Garza in the affidavit to conclude there was no time reported for the observation:
If you call that a run on sentence or two sentences blended together with the conjunctive and, but if you break it apart, it's within the last 48 hours a reliable confidential source of information contacted detectives, period. He observed narcotics being grown. So it shiftsas I read it, it shifts to the word being, but there is noto use *800 [defense counsel's] phrase, no temporal reference to what being means.
RP at 18-19.
¶ 13 This analysis would be appropriate and helpful if the court were analyzing a contract, where the language was the product of negotiation by business people and their lawyers. See Keystone Land & Dev. Co. v. Xerox Corp., 152 Wash.2d 171, 177-78, 94 P.3d 945 (2004). But this is not a contract between business people and their lawyers. Mr. Lyons and the police did not sit down with lawyers and draft the language of this affidavit. Indeed, the affidavits are prepared by police officers, not lawyers, on short notice, and sometimes without any input by lawyers at all. State v. Patterson, 83 Wash.2d 49, 57-58, 515 P.2d 496 (1973). So both the superior court and this court, sitting in an appellate capacity, must give great weight to a magistrate's determination that probable cause exists, and doubts are to be resolved in favor of the warrant. O'Connor, 39 Wash.App. at 123, 692 P.2d 208.
¶ 14 This affidavit certainly could be read as Mr. Lyons and, ultimately, the superior court judge read it. But the standard of review (abuse of discretion) and canons of construction (nontechnical reading, commonsense reading, with great deference to the magistrate, with doubts resolved in favor of the warrant) would require a reading in favor of the warrant. When so viewed, we conclude the language can be read to support both the observation and the reporting of that observation within 48 hours and therefore we conclude this warrant passes constitutional muster.
"[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."
State v. Walcott, 72 Wash.2d 959, 962, 435 P.2d 994 (1967) (emphasis omitted) (alteration in original) (quoting United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).
¶ 15 We reverse the superior court and remand for further proceedings.
I CONCUR: KORSMO, A.C.J.
SIDDOWAY, J., (dissenting).
¶ 1 understand the concerns of my colleagues. "[A] policeman's affidavit should not be judged as an entry in an essay contest nor subjected to microscopic examination." State v. Patterson, 83 Wash.2d 49, 55, 515 P.2d 496 (1973) (citing Spinelli v. United States, 393 U.S. 410, 438, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)(Fortas, J., dissenting)). I am satisfied, however, that this is not a case where an affidavit is being given a hypertechnical, rather than a commonsense, reading. The problem is not with the inferences drawn but with the fact that critical information is missing, depriving the magistrate of information critical to its neutral determination of probable cause.
¶ 2 The State argued that the district court could have interpreted the affidavit to mean that the confidential source's observations had taken place within the last 48 hours, despite what the prosecutor conceded to be inartful wording.[1] Report of Proceedings (RP)(Nov. 3, 2009) at 13; RP (Nov. 30, 2009) at 3. But there was no recording or other evidence that the district court was told this by the officer or otherwise came to this conclusion. Only by a strained reading can the informant's observation be wrapped into the 48-hour time frame and couching the separate events in one outside time frame is an unnatural way to present the information. As pointed out by Patrick Lyons, recency of the informant's observation would be less *801 important if the affidavit set forth any facts from which permanence could be inferred but the affidavit is unusually nonspecific in this respect as well; Mr. Lyons contrasts it to affidavits present in State v. Smith, 39 Wash.App. 642, 643, 694 P.2d 660 (1984), review denied, 103 Wash.2d 1034(1985), and State v. Payne, 54 Wash.App. 240, 242, 773 P.2d 122 (providing specific details of largescale growing operations), review denied, 113 Wash.2d 1019, 781 P.2d 1321(1989). As noted by the superior court, "We have absolutely no idea when [the confidential source] made the observation." RP (Nov. 3, 2009) at 19.
¶ 3 Most concerning to me is to see from the State's motion for reconsideration in the superior court that this was not an isolated case of inartful wording, but a manner in which information was presented in other cases and for which sanction was being requested. The State pointed out in moving for reconsideration that other departments of the superior court had denied motions to suppress evidence obtained by search warrants supported by similar affidavits.[2] It expressed concern about inconsistent results and the possibility of forum shopping. RP (Nov. 30, 2009) at 4. It asked for a reexamination of the suppression decision "in order [to] provide precedent and guidance for future cases and consistency amongst judges confronted with similar issues." Clerk's Papers (CP) at 20.[3]
¶ 4 This court has stated:
An affidavit supporting a search warrant must be sufficiently comprehensive to provide the issuing magistrate with facts from which he can independently conclude there is probable cause to believe the items sought are at the location to be searched. Further, these facts must be current facts, not remote in point of time, and sufficient to justify a conclusion by the magistrate that the property sought is probably on the person or premises to be searched at the time the warrant is issued.
State v. Spencer, 9 Wash.App. 95, 96-97, 510 P.2d 833(1973) (citations omitted). An important aspect of probable cause that we rely upon the magistrate to weigh is whether the information of criminal activity is too stale. See, e.g., State v. Larson, 29 Wash.App. 669, 671, 630 P.2d 485 (1981)(court cannot determine sufficient recency without dates for "recent" marijuana purchases).
¶ 5 An apt summary of the problem with the type of affidavit presented to the district court in this case is cited by author Wayne LaFave:
"Here, the affiant's information merely asserted that at some point in the past, which could have been a day, a week or months prior to the date of the affidavit, appellant had sold informantLohn marijuana. If we were to sustain the magistrate's determination [that this shows probable cause], the issuance of search warrants would be allowed solely upon suspicion of criminal conduct, a standard far less demanding than that embodied in the Fourth Amendment. We cannot countenance such a deviation from explicit constitutional norms. `Indeed, if the affidavit [and sworn testimony] in this case be adjudged valid, it is difficult to see how any function but that of a rubber stamp remains for [the magistrate].' * * * `It is one thing to expect the magistrate to give a commonsense reading to facts set forth and to draw inferences from them. It is quite another thing to expect the magistrate to reach for external facts and to build inference upon inference in order to create a reasonable basis for his belief that a crime is presently being committed.'"
*802 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.7(b) at 392(4th ed. 2004) (alterations in original) (quoting Commonwealth v. Simmons, 450 Pa. 624, 631, 301 A.2d 819 (1973)).
¶ 6 If there had been additional facts included in the affidavit from which recency could arguably be inferred, I would accept the magistrate's inferences. I would accept the magistrate's finding of probable cause if the State could offer a cogent explanation of how the affidavit can be read to be a grammatically flawed communication that it was the informant's observations that took place "within the last 48 hours." But neither circumstance exists here. I agree with the trial court that given this form of affidavit, the magistrate is forced to assume that the officer must have intended to communicate that the confidential source's observation was recent. This is not the role of a neutral magistrate envisioned by the federal and Washington constitutions.
¶ 7 I respectfully dissent.
NOTES
[1] The prosecutor urged, e.g., "[I]t would be very reasonable for the issuing Magistrate, in this case Judge Engel, to interpret the affidavit as describing that the confidential informant not only came to the detective within the last 48 hours, but also observed the marijuana growing in the last 48 hours. Granted it wasn't the best, or I should say the most clear wording by the detective in this matter, but it would be perfectly within the Judge'sor I should say the issuing Magistrate's discretion to interpret it accordingly." Report of Proceedings (Nov. 30, 2009) at 3-4.
[2] The affidavit in a case cited by the State had similarly stated, "`Within the last 48 hours, a reliable and confidential source of information (CS) contacted Narcotics Detectives and stated he/she could purchase narcotics, specifically Cocaine, from a person who lives at [address omitted].'" Clerk's Papers at 20. As with the affidavit in this case, the affidavit went on to generally describe what the confidential source had seen, and where, but without identifying any time frame for the confidential source's observations.
[3] The superior court denied the motion, noting that it had reviewed the reportedly inconsistent decision cited by the State, and said "I also examined the reasoning that went behind it. I think there is more uniformity than one would expect." RP (Nov. 30, 2009) at 5. He added that "I believe I made the right decision the first time and I think it is consistent with what would happen in other departments." Id.