FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                                  Respondent,<br><br>v.<br><br>JOHN R. GARDNER, JR.,<br><br>                                  Appellant. | No. 43297-8-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – John Gardner, Jr., appeals his conviction for unlawful possession of methamphetamine. He challenges the validity of a search warrant and the trial court's denial of his motion to suppress evidence seized under the warrant, the sufficiency of the evidence supporting the trial court's finding that he had possession of the methamphetamine, and the trial court's admission of prior misconduct evidence under ER 404(b). We affirm.

## FACTS

On August 26, 2011, Hoquiam Police Sergeant Jeremy Mitchell arrested Frank Wirshup for shoplifting a tool from a local hardware store. He interviewed Wirshup, who admitted stealing the tool and said that he sold it to a man known as "Johnny Five" in room 9 at the Snore and Whisker Motel. Suppl. Clerk's Papers (CP) Ex. 1. Mitchell prepared a written statement,

which Wirshup signed.[1] The statement provided that "[w]hile I was in [Johnny Five's] room I saw crystal methamphetamine inside along with digital scales and packaging. I have purchased methamphetamine from him in the past and know he sells methamphetamine." Suppl. CP Ex. 1.

Mitchell knew that "Johnny Five" was Gardner's nickname and was familiar with the Snore and Whisker Motel because of several reports of illegal narcotics activity involving Gardner. And Gardner previously had told Mitchell that he lived in room 9 at the motel. Mitchell submitted an affidavit to obtain a search warrant for room 9 at the Snore and Whisker. The affidavit referenced Wirshup's oral and written statements and discussions Mitchell had with Hoquiam Police Officer Drayton and Hoquiam Police Detective Bradbury about drug investigations of Gardner.

Law enforcement officers executed the warrant that same day. They encountered Gardner, who was alone in the motel room and was wearing pants and no shirt. The officers arrested Gardner and seized drug paraphernalia and 16.2 grams of methamphetamine. Gardner was charged with unlawful possession of methamphetamine.

Before trial, Gardner challenged the search warrant affidavit, claiming that (1) in his affidavit Mitchell recklessly or intentionally misstated that Wirshup saw drugs and drug paraphernalia in Gardner's motel room and made no reference to Wirshup's criminal history, and (2) the State failed to establish Wirshup's basis of knowledge as to the methamphetamine and his reliability as an informant. Gardner also submitted a declaration from Wirshup in which Wirshup stated that when Mitchell asked him about seeing drugs in the motel room, Wirshup responded, "Are you crazy?" Report of Proceedings (RP) (Jan. 6, 2012) at 4.

---

[1] The record contains two spellings for Frank Wirshup's last name: "Wirshup" and "Worship". We use "Wirshup" in the opinion because it is the spelling contained in his written statement. In the report of proceedings, the court reporter spells his name as "Worship".

The trial court held a *Franks*[2] hearing, at which Wirshup testified that he never gave information about Gardner to Mitchell. However, Wirshup also explained that about a month and a half after this incident:

> I was threatened by some individuals over this issue, okay, and I did go to [Mitchell], and I said, dude, see what you done did to me you know what mean. This is bull. I mean, if I was a rat, I would have got time off that sentence, and I did every day of my sentence of that, why would I tell you anything if I was going to get nothing. Are you crazy?

RP (Jan. 25, 2012) at 23. During cross-examination, Wirshup acknowledged that he had signed and initialed his original statement but stated that he could not read or write very well.

Mitchell testified that Wirshup told him that he could not read well and after typing the statement asked Wirshup if he understood its contents. Wirshup responded that he understood the statement. Mitchell explained:

> I said, see if you can read through it. He said he read through it. And I said you understand everything, and he said yes, and I asked him to sign that – or initialed that I had typed it for him and sign at the bottom. He expressed no confusion of what was in the statement.

RP (Jan. 25, 2012) at 29.

Following the *Franks* hearing, the trial court denied the motion to suppress evidence. The trial court entered (1) a finding of fact that Wirshup had seen methamphetamine in Gardner's motel room, had purchased methamphetamine from Gardner in the past, and had signed a written statement to that effect and (2) conclusions of law upholding the validity of the warrant. Gardner then waived his right to a jury trial and the matter proceeded to a bench trial.

Preliminarily, the State requested permission to offer testimony about the seized drug paraphernalia, scales, baggies, and smoking pipes. It also asked that the court allow evidence

---

[2] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

that the police officers seized heroin and oxycodone from Gardner's motel room. Gardner objected, claiming the evidence was prejudicial, irrelevant, and improper ER 404(b) evidence of other crimes, wrongs, or acts. The trial court allowed the State to introduce the requested evidence except testimony about the seized heroin and oxycodone.

The trial court found Gardner guilty and entered findings of fact and conclusions of law. Gardner appeals.

## ANALYSIS

### A. VALIDITY OF SEARCH WARRANT

Gardner argues that there was no probable cause to obtain a search warrant because (1) the warrant affidavit was based on false information and relevant information was omitted in violation of *Franks*, (2) the informants providing support for the warrant were unreliable in violation of *Aguilar-Spinelli*,[3] (3) the information Wirshup provided was stale, and (4) the trial court violated the appearance of fairness doctrine at the suppression hearing. We disagree.

We review the validity of a search warrant for an abuse of discretion, giving great deference to the magistrate's determination of probable cause. *State v. Maddox*, 152 Wn.2d. 499, 509, 98 P.3d 1199 (2004). In reviewing a search warrant affidavit, we must determine whether the affidavit sets forth sufficient facts to lead a reasonable person to conclude that there is a probability that the defendant is involved in criminal activity and that evidence of the activity can be found at the place to be searched. *Maddox*, 152 Wn.2d at 505. We consider only the information that was available to the magistrate at the time he/she issued the warrant. *State v.*

---

[3] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

4

No. 43297-8-II

*Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988). We resolve all doubts in favor of the warrant's validity. *Maddox*, 152 Wn.2d at 509.

    1.    Suppression Hearing Findings

Initially, Gardner argues that the trial court's statement of disputed facts mischaracterizes his challenges to the search, search warrant, and seizure of evidence. He also complains that there were many disputed facts and the trial court should have made findings on all of them. We review a trial court's findings of fact following a suppression hearing for substantial evidence in the record to support them. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). We treat unchallenged findings of fact as verities on appeal. *State v. Valdez*, 167 Wn.2d 761, 767, 224 P.3d 751 (2009).

Gardner did not object when the trial court presented its written findings and so has failed to preserve this issue for review. RAP 2.5(a). In any event, as we discuss below, the record supports the trial court's legal conclusions and we discern no prejudice from any alleged omitted findings.[4] The suppression hearing record supports the trial court's findings of fact and we treat them as the established facts for purposes of examining the conclusions of law.

---

[4] Gardner also argues that because he presented Wirshup's later written declaration, the State was required to offer into evidence the written statement Wirshup gave to Mitchell. But the State did introduce this statement at the suppression/*Franks* hearing. In his reply brief, Gardner argues that the State should have presented Wirshup's statement to the magistrate who issued the warrant. But this is not the claim he made in his opening brief and we do not consider it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (issue raised and argued for the first time in a reply brief is too late to warrant consideration).

2.   Information in Warrant Affidavit – *Franks*

Gardner argues that the warrant affidavit was deficient because Mitchell attributed statements to Wirshup that Wirshup did not make and omitted criminal history important in assessing Wirshup's credibility.

Under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution, factual inaccuracies or omissions in a warrant affidavit may invalidate the warrant if the defendant establishes that they are (1) material and (2) made in reckless disregard of the truth. *Franks*, 438 U.S. at 155-56; *State v. Chenoweth*, 160 Wn.2d 454, 462, 158 P.3d 595 (2007). The standard is "reckless or intentional" – a showing of negligence or inadvertence is insufficient. *Chenoweth*, 160 Wn.2d at 462. The *Franks* test for material misrepresentation includes material omissions of fact. *State v. Garrison*, 118 Wn.2d 870, 872, 827 P.2d 1388 (1992).

a.   Wirshup Statement

Gardner contends that Mitchell submitted false information in reporting what Wirshup had admitted during the interview following his arrest for third degree theft. Although Wirshup signed a statement connecting Gardner to methamphetamine, he later denied giving information to Mitchell or mentioning drugs.

The record supports the trial court's finding that the circumstances presented do not show that Mitchell intentionally disregarded the truth when applying for a search warrant. First, the disputed testimony presented an issue of credibility for the trial court, and the trial court found the officer's testimony more credible. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (credibility s are not reviewable on appeal). Similarly, the trial court found that Wirshup's earlier affidavit was more credible than the one he presented at the *Franks* hearing.

Second, the record shows that Wirshup gave his later conflicting declaration after Gardner's friends threatened him. This timing suggests that he was denying what had happened in order to protect himself. Third, Wirshup acknowledged that he initialed and signed the original statement and made no claim that Mitchell threatened or coerced him. The trial court did not err in concluding that Wirshup's new declaration did not establish intentional or reckless inclusion of false information.

   b. Criminal History

  Gardner argues that Mitchell intentionally or with reckless disregard for the truth omitted Wirshup's criminal history – that Wirshup was "a petty thief and a liar" – from the search warrant affidavit. Br. of Appellant at 22. Gardner claims that Mitchell purposely omitted this information.

  At the *Franks* hearing, Mitchell testified that Hoquiam police officers had arrested Wirshup several times for misdemeanor thefts. When asked why he left this out of the search warrant affidavit, Mitchell said that he did not think that it was important at the time. He also testified that Wirshup "has always been truthful with me, so I didn't have a thought that he was lying to me." RP (Jan. 25, 2012) at 7.

  Nothing in the record demonstrates that Mitchell recklessly or deliberately omitted Wirshup's criminal history. First, an informant's criminal history may not be relevant to whether probable cause exists. *See State v. Taylor*, 74 Wn. App. 111, 121, 872 P.2d 53 (1994) ("omission of the informant's criminal record and ulterior motive for supplying information was not material because informants frequently have criminal records as well as ulterior or self-serving motives for divulging the information"). Second, if Mitchell genuinely believed that the information was not important, the omission was simply a mistake rather than reckless or

deliberate. *See State v. O'Connor,* 39 Wn. App. 113, 118, 692 P.2d 208 (1984) (because the officer "genuinely believed that the omitted statement was irrelevant, even if that belief was mistaken, the omission was not reckless or deliberate"). The trial court did not err in concluding that Mitchell's omission of Wirshup's criminal history did not undermine the magistrate's finding of probable cause.

Gardner fails to show that the search warrant affidavit contained false information or omitted information that was necessary for a proper determination of probable cause. As a result, we hold that the warrant was valid under *Franks.*

3.    Reliability of Informants – *Aguilar-Spinelli*

Gardner challenges the basis of knowledge and reliability of the informants on which Sergeant Mitchell relied in his search warrant affidavit. Washington applies the *Aguilar-Spinelli* test to assess the validity of an informant's tip used to establish probable cause.[5] *State v. Jackson,* 102 Wn.2d 432, 435-38, 688 P.2d 136 (1984). Under this test, an affidavit should demonstrate an informant's (1) basis of knowledge and (2) credibility. *Jackson,* 102 Wn.2d at 437. If an affidavit does not contain these two parts, it still can show probable cause if police investigation sufficiently corroborates the informant's statements. *Jackson,* 102 Wn.2d at 438. The *Aguilar-Spinelli* test does not directly apply to named informants. *O'Connor,* 39 Wn. App. at 120 ("[T]he *Aguilar/Spinelli* strictures were aimed primarily at *unnamed* police informers.").

We apply a four-factor test in evaluating an informant's credibility: whether the informant (1) is named, (2) provides a statement against interest, (3) provides statements while

---

[5] Although the United States Supreme Court has abandoned this two-pronged test in favor of a totality of the circumstances test, *Illinois v. Gates,* 462 U. S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the state of Washington adheres to the *Aguilar–Spinelli* test under article 1, section 7 of our constitution. *State v. Jackson,* 102 Wn.2d 432, 440-43, 688 P.2d 136 (1984).

under arrest, and (4) provides an adequate amount and kind of detail. *O'Connor,* 39 Wn. App. at 120-22.

With regard to Wirshup, the search warrant affidavit explains his basis of knowledge. While in Gardner's motel room, Wirshup observed methamphetamine, digital scales, and packaging materials. He admitted having purchased methamphetamine in the past and, thus, was familiar with its appearance. This was sufficient to establish his basis of knowledge.

The *O'Connor* factors also establish Wirshup's credibility. First, the affidavit listed Wirshup's name, supporting his credibility because an informant is less likely to lie when identified by name. *O'Connor,* 39 Wn. App. at 121. Second, Wirshup made a statement against his interest by admitting to stealing the tool and saying that he had purchased methamphetamine from Gardner in the past. *O'Connor,* 39 Wn. App. at 120-21. Third, Wirshup made his statements while under arrest. *O'Connor,* 39 Wn. App. at 121 (holding that arrested informants are reliable especially if they believe telling the truth will be in their interest) (citing *State v. Bean,* 89 Wn.2d 467, 471, 572 P.2d 1102 (1978)). Fourth, Wirshup provided enough detail for the police to corroborate Gardner's street name, location, and on-going drug activity.

Gardner also argues that because the search warrant affidavit contained hearsay statements from police officers Bradbury and Drayton, the *Aguilar-Spinelli* test applies to them as well.[6] We disagree. As we noted above, the *Aguilar-Spinelli* test is used to assess the reliability of unnamed police informants, not law enforcement officers. *O'Connor,* 39 Wn. App. at 120. In any event, both officers were named in the affidavit and we presume that police

---

[6] Gardner relies on *State v. Lair,* 95 Wn.2d 706, 709, 630 P.2d 427 (1981), but that case is inapplicable because it involves statements from a second police informant rather than another police officer.

officers are reliable. *State v. Matlock*, 27 Wn. App. 152, 155, 616 P.2d 684 (1980). As this court observed in *State v. Laursen*, 14 Wn. App. 692, 695, 544 P.2d 127 (1975), "[A]n affiant, seeking a warrant, can base his information on information in turn supplied him by fellow officers." We hold that the search warrant was valid based on the informants' basis of knowledge and credibility.

4. Staleness of Information

Gardner claims that the information Wirshup provided to the police was stale and, therefore, could not support probable cause to obtain a warrant. He argues that because 52 hours passed between the time Wirshup stole the tool and the time police obtained the warrant, it was unreasonable to conclude that drugs would still be present in Gardner's room. Gardner particularly relies on the fact that Wirshup did not say how much methamphetamine he had seen or how it was packaged.

One of the requirements to the issuance of a search warrant is that there is reason to believe that the items sought are at the place to be searched. *State v. Cockrell*, 102 Wn.2d 561, 569-70, 689 P.2d 32 (1984). Some time necessarily passes between an informant's observations of criminal activity and the presentation of the warrant affidavit to the magistrate. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012). "The magistrate must decide whether the passage of time is so prolonged that it is no longer probable that a search will reveal criminal activity or evidence, i.e., that the information is stale. The magistrate makes this determination based on the circumstances of each case." *Lyons*, 174 Wn.2d at 361. The magistrate makes this determination based on the circumstances of each case, *Lyons*, 174 Wn.2d at 361, guided by common sense. *Maddox*, 152 Wn.2d at 505.

In the search warrant affidavit, Mitchell declared, "[Wirshup] said while he was there he observed crystal methamphetamine lying around as well as a digital scale and packaging. Wirshup said he ha[d] purchased methamphetamine from 'Jo[h]nny Five' in the past and knows he sells to others." CP at 20. The affidavit also explained the officer's familiarity with Gardner, that the drug task force had an ongoing investigation against him in which a confidential informant had purchased methamphetamine numerous times from Gardner, and that Drayton had observed "numerous short stay foot and vehicle traffic at Gardner's room" during the night before obtaining the warrant. CP at 21.

This information revealed an ongoing drug trade, not a person possessing for his individual use. As a result, the information was not stale. *See State v. Perez*, 92 Wn. App. 1, 8-9, 863 P.2d 881 (1998) (information not stale where police obtained warrant three days after last observation when affidavit included information and police observations suggesting that defendant was a drug dealer with ongoing drug activities). We hold that Gardner's staleness claim fails.

5.   Appearance of Fairness

Gardner argues that the trial court violated the appearance of fairness doctrine during the *Franks* hearing by associating social status with the ability to tell the truth. Gardner claims that the trial court gave a "rambling monologue" in which it essentially concluded that police officers do not lie, and homeless people always lie. Br. of Appellant at 33.

Under the appearance of fairness doctrine, a judicial proceeding is valid only if a "reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). A defendant must show evidence of a judge's actual or potential bias for an appearance of fairness

claim to succeed. *Gamble*, 168 Wn.2d at 187-88. But Gardner did not assert this claim below, and claims of bias or violations of the appearance of fairness doctrine may not be raised for the first time on appeal. *State v. Morgensen*, 148 Wn. App. 81, 90–91, 197 P.3d 715 (2008). Accordingly, we need not consider this argument. [7]

B.      POSSESSION OF CONTROLLED SUBSTANCE

Gardner argues that the evidence was insufficient to show that he had actual or constructive possession of a controlled substance. Specifically, he argues that the State failed to show that he had dominion and control of the premises where the police discovered the methamphetamine. We disagree.

1.      Findings of Fact

Initially, Gardner claims that the trial court record does not support a number of findings of fact the trial court entered after trial. Following a bench trial, our review is limited to determining whether substantial evidence supports the trial court's findings and, if so, whether the findings in turn support the conclusions of law. *State v. Homan*, 172 Wn. App. 488, 490, 290 P.3d 1041 (2012), *review granted*, 177 Wn.2d 1022 (2013).

Gardner argues that finding of fact 1 – that originally he was charged with possession with intent to deliver – is true but irrelevant. But this finding of fact is nothing more than background information that reflects the trial court's and Gardner's concern that the State amended the information on the day of trial from delivery to a simple count of possession.

_____

[7] We also disagree with Gardner's characterization of the trial court's statements. It appears that the trial court judge was simply using illustrations to explain that a detached and neutral magistrate evaluating a search warrant affidavit applies his/her common sense and experience to the facts presented.

Gardner argues that the record does not support finding of fact 2 that he was "residing" at the Snore and Whisker Motel, claiming that the evidence indicated only that he was "associated" with the room. Br. of Appellant at 9. The record supports this finding. Mitchell testified that on August 19, he "contacted [Gardner] in the room, at which point he told me he was living there." RP (Jan. 31, 2012) at 48.

Gardner also challenges three parts of finding of fact 3. First, he argues that he did not stipulate to admissibility of the methamphetamine but in fact challenged the search warrant and the search, and sought suppression of the methamphetamine. But the finding is from the bench trial, which took place after the trial court denied Gardner's motion to suppress. At the bench trial, Gardner stipulated as set forth in the finding. The trial court specifically asked him, "First of all, is the stipulation acknowledged counsel?" Defense counsel responded, "Yes, it is, Your Honor." The trial court then asked, "Now as to the admission of the evidence, your position?" Defense counsel responded, "No objection." RP (Jan. 31, 2012) at 77-78.

Second, Gardner argues that the finding that the officers found packaging materials, a scale, and drug paraphernalia was immaterial to the charge of possession, highly prejudicial, and excludable under ER 404(b). But this evidence was in the record and supports the finding of fact. Further, as we discuss below, this evidence was admitted properly.

Third, Gardner argues that evidence regarding seized heroin and oxycodone (for which Gardner was not charged) was unrelated to the charged crimes, immaterial, and highly prejudicial. He argues that the trial court excluded this evidence, and therefore the record does not support the finding. While Gardner is correct, the trial court explained that it included this information as background so that on review this court would understand the State's late charging decision. In our view, the finding is surplusage that has no bearing on our decision.

13

In summary, the trial court record supports the trial court's findings of fact and we treat them as the established facts for purposes of examining the conclusions of law.

2. Sufficiency of the Evidence

Evidence is sufficient to support a conviction if "after viewing the evidence and all reasonable inferences from it in the light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt." *Homan*, 172 Wn. App. at 490-91. We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "The same standard applies regardless of whether the case is tried to a jury or to the court." *State v. Rangel-Reyes*, 119 Wn. App. 494, 499, 81 P.3d 157 (2003)( citing *State v. Little*, 116 Wn.2d 488, 491, 806 P.2d 749 (1991)).

Possession may be actual or constructive. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002); *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). A person has actual possession when he or she has physical custody of the item, and constructive possession when he or she has dominion and control over the item. *Jones,* 146 Wn.2d at 333. Whether a person had dominion and control over an item depends on the totality of the circumstances. *State v. Jeffrey,* 77 Wn. App. 222, 227, 889 P.2d 956 (1995). And a person's dominion and control over the premises allows the trier of fact to infer that the person has dominion and control over items in the premises. *State v. Shumaker*, 142 Wn. App. 330, 333, 174 P.3d 1214 (2007); *State v. Contabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996).

Here, the evidence was sufficient to prove that Gardner constructively possessed the methamphetamine. On August 19, 2011, Mitchell had contact with Gardner at the Snore and Whisker Motel and Gardner told Mitchell that he lived in room 9. When the police officers

14

searched the room on August 26, 2011, Gardner was the only person present, was wearing only pants with no shirt, and was exiting the interior room where the officers discovered the methamphetamine. Although the State did not provide evidence that Gardner was a registered guest/tenant or other evidence indicating residency, there also was no evidence of any other person staying there. This evidence, along with proper inferences from it, demonstrates that Gardner had dominion and control of the room and, therefore, its contents. Gardner's sufficiency claim fails.

C.      ER 404(B) EVIDENCE

Gardner argues that the trial court erred in allowing into evidence testimony about and photographs of the drug paraphernalia, scales, baggies, and smoking pipes. He claims that this evidence was irrelevant, prejudicial, and unnecessary to prove possession. We disagree.

We review evidentiary rulings for abuse of discretion. *State v. Lormor*, 172 Wn.2d 85, 94, 257 P.3d 624 (2011). Here, the trial court admitted the evidence because it was related to possession of methamphetamine, the charged crime. Notably, it excluded evidence that the police also seized heroin and oxycodone.

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith", but may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The list of other purposes for which evidence of a defendant's prior misconduct may be introduced is not exclusive. *State v. Baker*, 162 Wn. App. 468, 475, 259 P.3d 270, *rev. denied*, 173 Wn.2d 1004, 268 P.3d 942 (2011). We review the trial court's decision to admit evidence under ER 404(b) for abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion if it relies

15

on unsupported facts, applies the wrong legal standard, or adopts a position no reasonable person would take. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007).

We read ER 404(b) in conjunction with ER 403, which requires the trial to court to exercise its discretion in evaluating whether relevant evidence is unfairly prejudicial. *Fisher*, 165 Wn.2d at 745. Before a trial court admits evidence under ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *Fisher*, 165 Wn.2d at 745. The trial court must complete this ER 404(b) analysis on the record in order to permit the appellate court to determine whether the trial court's exercise of discretion was based on careful and thoughtful consideration of the issue. *Fisher*, 165 Wn.2d at 745.

Here, relying in part on *State v. Jordan*, 79 Wn.2d 480, 482-83, 487 P.2d 617 (1971), the trial court allowed the State to introduce materials that Gardner would have used personally in ingesting controlled substances. In *Jordan*, the trial court allowed evidence of needle marks and drug paraphernalia in a prosecution for narcotics possession because it explained the circumstances under which the police had discovered the defendant. 79 Wn.2d at 483. The reviewing court agreed and noted that some misconduct involving criminal conduct is admissible because it is an inseparable part of the charged crime. *Jordan*, 79 Wn.2d at 483 (citing *State v. Niblack*, 74 Wn.2d 200, 206-07, 443 P.2d 809 (1968)).

We find no abuse of discretion here. The trial court admitted only those items that were related to possession and use of methamphetamine, and the evidence was relevant to prove possession and use. It excluded evidence that the police discovered other drugs in the room. *See State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970) (we presume a trial court judge in a non-

16

jury trial will not consider inadmissible evidence). The trial court's ruling had a tenable basis and minimized any prejudice. We hold that the trial court properly admitted evidence relating to drug use and possession.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

HUNT, J.

WORSWICK, C.J.